MYLES S. BREINER          4364
841 Bishop Street, Suite 2115
Honolulu, Hawaii 96813
Telephone:  (808) 526-3426
E-Mail:      Myles@Breinerlaw.net

Attorney for Plaintiffs
Jane Does 1-10

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JANE DOES 1-10, )<br><br>              Plaintiffs, )<br><br>                        v. )<br><br>**STATE OF HAWAII**,<br>**NOLAN ESPINDA**, in his Capacity<br>as the Director of Public Safety;<br>**ERIC G. TANAKA**, individually<br>and in his capacity as Warden of<br>the Women's Community Correctional<br>Center; **Chevon Freitas** individually, and<br>in her Capacity as an Adult Corrections<br>Officer; **Taofi Magalei**, individually, and<br>in his  Capacity as an Adult Corrections<br>Officer; **Brent Bauman**, individually,<br>and in his Capacity as an Adult<br>Corrections Officer;  **Gauta Va'a**,<br>individually, and in his Capacity as an<br>Adult Corrections Officer; **James Sinatra**,<br>individually, and in his Capacity as an<br>employee of the Hawaii Department of | Civil No._____<br><br>COMPLAINT FOR<br>DAMAGES; DEMAND FOR<br>JURY TRIAL; SUMMONS |

Public Safety.                          )
                                        )
                                        )
                    Defendants.         )
_____ )

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs, JANE DOES 1-10, fictitious names used to protect Plaintiffs' privacy interest by and through their attorney, MYLES S. BREINER, and for their Complaint against the above-named Defendants, allege and aver as follows:

### FACTUAL BACKGROUND

Plaintiffs seek compensation for injuries from being sexually assaulted and harassed by Defendant Adult Correctional Officers CHAVON FREITAS, TAOFI MAGALEI, BRENT BAUMAN and GAUTA VA'A, and by JAMES SINATRA, an employee of the State of Hawaii Department of Public Safety ( "DPS"), while incarcerated at the Women's Community Correctional Center in Honolulu, Hawaii ("WCCC"). Plaintiffs' injuries are due to Defendant State of Hawaii's failure to properly hire, train and supervise guards and employees at WCCC, Defendant State of Hawaii's disregard for an obvious and ongoing pattern and practice of sexual abuse of inmates by both male and female guards and employees at WCCC that dates back at least 25 years, an intentional disregard for the safety of Plaintiffs and others similarly situated at WCCC and Defendant State of Hawaii's invasion

of Plaintiffs' right to be free from bodily intrusions.  The State of Hawaii's failure to properly hire, train or supervise guards and employees and the policies and procedures in place create an unsafe and threatening environment for female prisoners at WCCC.

## JURISDICTION

1.      All parties resided or were duly incorporated in the State of Hawaii at the time of the alleged incidents.

2.      At the time of the filing of this Complaint, all Plaintiffs were residents of the City and County of Honolulu, State of  Hawaii.

3.      The situs of the tortious acts is the Women's Community Correctional Center located in Honolulu, Hawaii.

4.      Plaintiffs' claims primarily arise out of 42 U.S.C § 1983, and subject matter jurisdiction is proper in the United States District Court for the District of Hawaii.

5.      Plaintiffs' ancillary claims are appropriate jurisdiction for the United States District Court for the District of Hawaii.

6.      Defendants  Freitas, Magalei, Bauman, Va'a and Sinatra were at all times during the alleged incidents employed by the State of Hawaii.

7.      Defendants  Freitas, Magalei, Bauman, Va'a and Sinatra were at all times during the alleged incidents,  residents of the State of Hawaii.

## PARTIES

8.    Plaintiff JANE DOES 1, (hereinafter "Plaintiff Doe 1") is and was at all times relevant to this Complaint a resident of Hawaii.

9.    Plaintiff JANE DOE 2 (hereinafter "Plaintiff Doe 2") is and was at all times relevant to this Complaint a resident of Hawaii.

10.    Plaintiff JANE DOE 3 (hereinafter "Plaintiff Doe 3") is and was at all times relevant to this Complaint a resident of Hawaii.

11.    Plaintiff JANE DOE 4 (hereinafter "Plaintiff Doe 4") is and was at all times relevant to this Complaint a resident of Hawaii.

12.    Plaintiff JANE DOE 5 (hereinafter "Plaintiff Doe 5") is and was at all times relevant to this Complaint a resident of Hawaii.

13.    Plaintiff JANE DOE 6, (hereinafter "Plaintiff Doe 6") is and was at all times relevant to this Complaint a resident of Hawaii.

14.    Plaintiff JANE DOE 7, (hereinafter "Plaintiff Doe 7") is and was at all times relevant to this Complaint a resident of Hawaii.

15.    Plaintiff JANE DOE 8, (hereinafter "Plaintiff Doe 8") is and was at all times relevant to this Complaint a resident of Hawaii.

16.    Plaintiff JANE DOE 9, (hereinafter "Plaintiff Doe 9") is and was at all times relevant to this Complaint a resident of Hawaii.

17.    Plaintiff JANE DOE 10, (hereinafter "Plaintiff Doe 10") is and was at all times relevant to this Complaint a resident of Hawaii.

18.    Defendant State of Hawaii is and was at all times relevant hereto a governmental entity operating a prison / correctional facility as an employer and under color of law.

19.    Defendant NOLAN ESPINDA, ("Defendant Espinda") is and was at all times relevant to this Complaint the Department Head of the Department of Public Safety, employed by the State of Hawaii.  He is sued in his official capacity as said Department Head.

20.    Defendant ERIC G. TANAKA, ("Defendant Tanaka") is and was at all times relevant to this Complaint, the Warden of the Women's Community Correctional Center ("WCCC"). Mr. Tanaka is sued both in his individual capacity and his official capacity as the Warden of the WCCC.

21.    Defendant CHAVON FREITAS, ("Defendant Freitas") is and was at all times relevant hereto an Adult Corrections Officer ("ACO")  employed by the State of Hawaii Department of Public Safety.  Her actions were under color of state law, and she is sued both in her individual capacity and as an employee of the State of Hawaii.

22.    Defendant TAOFI MAGALEI, ("Defendant Magalei") is and was at all times relevant hereto an ACO  employed by the State of Hawaii Department of

Public Safety. His actions were under color of state law, and he is sued both in his individual capacity and as an employee of the State of Hawaii.

23.   Defendant BRENT BAUMAN, ("Defendant Bauman") is and was at all times relevant hereto an ACO  employed by the State of Hawaii Department of Public Safety. His actions were under color of state law, and he is sued both in his individual capacity and as an employee of the State of Hawaii.

24.   Defendant GAUTA VA'A, ( "Defendant Va'a") is and was at all times relevant hereto an ACO employed by the State of Hawaii Department of Public Safety. His actions were under color of state law, and he is sued both in his individual capacity and as an employee of the State of Hawaii.

25.   Defendant JAMES SINATRA, ( "Defendant Sinatra") is and was at all times relevant hereto an employee of the State of Hawaii Department of Public Safety. His actions were under color of state law, and he is sued both in his individual capacity and as an employee of the State of Hawaii.

## FACTUAL ALLEGATIONS

### PLAINTIFF DOE 1

26.   For the relevant time period on or about September 26, 2015 through October 25, 2015, Plaintiff Doe1 was an inmate at WCCC.

27.    Defendant Freitas, a female ACO, was employed at the WCCC during that time.

28.     Defendant Tanaka was the warden at  WCCC at that time.

29.     Beginning on or about September 26, 2015 and continuing through

October 25, 2015, Defendant Freitas encouraged and coerced Plaintiff Doe 1 to

visit with her in the control room at WCCC.  Plaintiff Doe 1 was encouraged and

allowed to remain in the control room with Defendant Freitas, to not attend her

work duties, to not attend her classes, or to do any of her normal activities.

Defendant Freitas  provided Plaintiff Doe 1 with whatever sick notes she needed to

excuse her from her required duties. Plaintiff Doe 1 was instructed by Defendant

Freitas to watch the camera monitors for approaching ACOs and was required to

leave the control room only when another ACO was seen on the camera monitor

entering the housing unit.

30.     Defendant Freitas sat with Plaintiff Doe 1 at dinner at her table in the

dining room in front of other inmates and ACOs in an open and obvious manner.

31.     Beginning on October 1, 2015, Defendant Freitas coerced and

encouraged Plaintiff Doe 1 to engage in sexual acts with her in the Ahiki control

room, in a staff bathroom, in the janitors closet and in the kitchen.  Defendant

Freitas performed oral sex on Plaintiff Doe 1 and received oral sex from Plaintiff

Doe 1.

32.     On or about October 4, 2015, Defendant Freitas proposed marriage to

Plaintiff Doe 1. Plaintiff Doe 1 said "yes" to the marriage proposal, and was

instructed to meet Defendant Frietas in the staff bathroom. Plaintiff Doe 1 blocked the bathroom windows and covered the floor with trash bags and Plaintiff Doe 1 and Defendant Freitas proceeded to have sex on the bathroom floor. Another inmate was engaged to stand watch for other ACOs.

33.     In exchange for said sexual acts, Defendant Freitas provided contraband for Plaintiff Doe 1, which included clothing and hair care products. Defendant Freitas also allowed Plaintiff Doe 1 to use her cell phone and to access her Facebook account.

34.     On or about October 19, 2015, Defendant called Plaintiff Doe 1 into the control room and presented her with several wedding rings, allowing Plaintiff Doe 1 to choose a ring. On or about October 20, 2015, Defendant Freitas proposed marriage, and provided Plaintiff Doe 1 with a 14 karat white-gold wedding band.

35.     In exchange for said sexual acts, Defendant Freitas told Plaintiff Doe 1 that she loved her and  promised to provide Plaintiff Doe 1 with financial support, ensuring her they would have a happy life together.

36.     Beginning in or about 2013 through August 2015, Defendant Magalei, an ACO at WCCC, made inappropriate comments to Plaintiff Doe 1 about sex and about "giving him head", encouraged her to have sex with him,  fondled Plaintiff Doe 1's breasts, and put his hand down Plaintiff Doe 1's pants to touch and digitally penetrate her vagina, in exchange for additional food privileges for

Plaintiff Doe 1. Plaintiff Doe 1 was called by Defendant Magalei to meet with him at whatever post he was assigned to "hang out" with him or to "pick up newspapers", as a precursor to sexual assault.

37.     Beginning in or about 2013 through August 2015, Defendant Magalei, an ACO at WCCC, would call Plaintiff Doe 1 to his post and ask her to clean the gate house. Plaintiff Doe 1 was told to pull down her pants so that Defendant Magalei could look at her buttocks while she cleaned and he would pull up her shirt and suck on her breasts. In exchange for her compliance, Plaintiff Doe 1 was allowed to eat Defendant Magalei's food, and was provided granola bars and Fiber One bars.

38.     Defendant Magalei progressed in his sexual coercion during June, July and August, 2015, when on numerous occasions he called Plaintiff Doe 1 to the control room, pulled Plaintiff Doe 1 into the staff bathroom and forced her to perform oral sex upon him, despite her protests. Upon completion Defendant Magalei would exit the staff bathroom first, looking out for other ACOs, then allow Plaintiff Doe 1 to exit. Plaintiff complied with Defendant Magalei's sexual demands for fear of retribution and punishment. When Plaintiff Doe 1 did not respond to Defendant Magalei's demands she was written up for rules violations that never occurred.

## PLAINTIFF DOE 2

39.    For the relevant time period on or about September 26, 2015 through October 25, 2015, Plaintiff Doe 2 was an inmate at WCCC.

40.    Defendant Magalei, a male ACO, was employed at the WCCC during that time.

41.    Defendant Eric G. Tanaka was the warden at WCCC at that time.

42.    Beginning in or about March 2015 through October 2015, Defendant Magalei, an ACO at WCCC, held Plaintiff Doe 2 back from her functions, from medication line, and called Plaintiff Doe 2 to the control center, where he was stationed, to demand and receive oral sex from her in the staff bathroom. Defendant Magalei further sexually assaulted Plaintiff Doe 2 in the control room during lock-down, forcing Plaintiff Doe 2 to perform oral sex upon him on at least twenty (20) occasions during the seven month period of time between March 2015 and October 2015. Defendant Magalei threatened Plaintiff Doe 2 and told her not to talk to anyone about the forced oral sex. She complied with his demands out of fear of retribution.

## PLAINTIFF DOE 3

43.    For the relevant time period on or about August 2015 through October 25, 2015, Plaintiff Doe 3 was an inmate at WCCC.

44.    Defendant Magalei, a male ACO, was employed at the WCCC during that time.

45.    Defendant Tanaka was the warden at  WCCC at that time.

46.    Beginning in or about August 2015 through October  2015, Defendant Magalei, an ACO at WCCC, exposed himself to Plaintiff Doe 3 on two (2) occasions; once in the control room when he was masturbating and a second time when he pulled down his zipper and pulled out his erect penis at the food-tray slot (the trap door). Defendant Magalei asked Plaintiff Doe 3 if she "wanted some ." Plaintiff Doe 3 was sickened and disgusted at being forced to see Defendant Magalei's erect penis and at his suggestions.

**PLAINTIFF DOE 4**

47.    For the relevant time period on or about April 5, 2015 through October 5, 2015, Plaintiff Doe 4 was an inmate at WCCC.

48.    Defendant Magalei, a male ACO, was employed at the WCCC during that time.

49.    Defendant Tanaka was the warden at  WCCC at that time.

50.    Beginning on or about April 5, 2015 through October 5, 2015, Defendant Magalei sexually assaulted Plaintiff Doe 4 on six (6) different occasions at WCCC.

51.   On or about April 5, 2015, Defendant Magalei called Plaintiff Doe 4 to the control station, ordered her into the staff bathroom, and demanded and forced her to perform oral sex. Plaintiff Doe 4 complied with Defendant Magalei's demand out of fear of reprisal. Defendant Magalei ejaculated into Plaintiff Doe 4's mouth, pulled her to her feet and inserted his fingers in her vagina. Defendant Magalei laughed at Plaintiff

Doe 4 as she was forced to swallow his semen. Defendant Magalei taunted Plaintiff Doe 4 about the incident, especially when her boyfriend came to visit her at the WCCC facility.

52.   In and after May 2015, Plaintiff Doe 4 was working in the kitchen at WCCC when Defendant Magalei told her to go into the empty side room, where he held her up against the wall and forced her to perform oral sex upon him. Defendant Magalei then tried to pull down Plaintiff Doe 4's pants to perform oral sex upon her but she did not allow it due to having her menstruation, so instead Defendant Magalei put his hands into Plaintiff Doe 4's pants and penetrated her vagina with his fingers.

53.   On or after September 2, 2015 and up to October 5, 2015, Defendant Magalei called Plaintiff Doe 4 and another inmate, Plaintiff Doe 2, out of medication line and ordered them to the control room bathroom where he received oral sex from Plaintiff Doe 2 while he had his hand in Plaintiff Doe 4's pants, with

his fingers inserted in her vagina.  After they finished, another ACO was concerned about Plaintiff Doe's 2 and 4's  time absent from the medication line and asked Plaintiff Doe 4 if she had something "going on" with Defendant Magalei. A second ACO asked Plaintiff Doe 4 the same question and informed her that the ACOs were talking about her being with Defendant Magalei.  The last time Defendant Magalei attempted to call Plaintiff Doe 4 to the control room another ACO stopped her and called the watch commander. Plaintiff Doe 4 was told to return to her cell.

54.     Defendant Magalei taunted Plaintiff Doe 4 about her boyfriend during the period of time he was sexually assaulting her, belittling her and causing her to live in a constant state of fear and anxiety that her family would find out about the sexual assault. In exchange for his sexual assault upon Plaintiff Doe 4, Defendant Magalei would allow Plaintiff Doe 4 to eat extra food intended for the ACOs.

**PLAINTIFF DOE 5**

55.     For the relevant time period on or about September 26, 2015 through October 25, 2015, Plaintiff Doe 5 was an inmate at WCCC.

56.      Defendant Bauman, a male ACO, was employed at the WCCC during that time.

57.     Defendant Tanaka was the warden at  WCCC at that time.

58.     Beginning in or about  March 2015 through December 20, 2015, Plaintiff Doe 5 was an inmate working as a  janitor at Olomana, having access

privileges to the control rooms and to the ACOs. Defendant Bauman, an ACO at WCCC, gained the trust of Plaintiff Doe 5 and made sexual suggestions and requests of her.

59.    Plaintiff Doe 5 performed oral sex upon Defendant Bauman on approximately nine (9) occasions while Defendant Bauman was seated on a chair in the Olomana control room. He ejaculated into Plaintiff's mouth on eight (8) different occasions. During one oral sex session Defendant Bauman used his cell phone to videotape Plaintiff Doe 5 performing oral sex on him.  During another session,  Plaintiff Doe 5 and another female inmate performed oral sex upon Defendant Bauman in the staff bathroom at the Olomana control center. Defendant Bauman again ejaculated into Plaintiff Doe 5's mouth.

60.    In exchange for the sexual acts, Defendant Bauman rewarded Plaintiff Doe 5 with contraband, including eye liner, mascara, lipstick, a double- sided mirror, candy, chocolate covered strawberries, hair bands and other items.

**PLAINTIFF DOE 6**

61.    For the relevant time period on or about  October  2015 through November  2015, Plaintiff Doe 6 was an inmate at WCCC.

62.     Defendant Bauman, a male ACO, was employed at the WCCC during that time.

63.    Defendant Tanaka was the warden at  WCCC at that time.

64.     In or about October and November 2015, Defendant Bauman, an ACO at WCCC, encouraged and coerced Plaintiff Doe 6 to engage in sexual acts with him while he was working in the Olomana control room. Defendant Bauman penetrated Plaintiff Doe 6's vagina with his fingers and fondled her breasts. Following the fondling, Plaintiff Doe 5 performed oral sex on Defendant Bauman and he ejaculated onto his uniform. Defendant Bauman required Plaintiff Doe 6 to clean his ejaculation off of his uniform.

65.     In or about October and November 2015, in the Olomana control room, Defendant Bauman requested and required Plaintiff Doe 6 to perform a lap dance for him while she was naked from the waist down.

66.     In exchange for Plaintiff Doe 6's sexual activities, Defendant Bauman provided Plaintiff Doe 6 with contraband, including candy, e-cigarettes, make-up, access to a cell phone, access to the internet and Facebook, and allowed her to eat food designated for the ACOs.

**PLAINTIFF DOE 7**

67.     For the relevant time period on or about September 26, 2015 through November 26, 2015, Plaintiff Doe 7 was an inmate at WCCC.

68.     Defendant Bauman, a male ACO, was employed at the WCCC during that time.

69.     Defendant Tanaka was the warden at WCCC at that time.

70.     Beginning in or about September 2015, Defendant Bauman began approaching Plaintiff Doe 7 to engage in sexual acts with him, suggesting that he could "take care of her sexual needs". He made comments about her body and rubbed up against her in a sexually suggestive way, encouraging her to have sexual relations with him. On two occasions Defendant Bauman brought Plaintiff Doe 7 to the Olomana control room to offer her sexual activities in exchange for food. Defendant Bauman continued his pressure and encouraged and enticed Plaintiff Doe 7 to allow him to film her using a dildo that he would provide for her.

71.     On November 26, 2015 Defendant Bauman carried a dildo into WCCC for Plaintiff Doe 7, intending for her to use it while he filmed her inserting it into her vagina. Because of scheduling difficulties, Defendant Bauman never had the opportunity to actually film Plaintiff Doe 7 using the dildo he carried into WCCC.

**PLAINTIFF DOE 8**

72.     For the relevant time period on or about July 2015 through December 2015, Plaintiff Doe 8 was an inmate at WCCC.

73.      Defendant Va'a, a male ACO, was employed at the WCCC during that time.

74.     Defendant Tanaka was the warden at WCCC at that time.

75.     Beginning in July 2015, Defendant Va'a began a relationship with Plaintiff Doe 8 when she was housed at WCCC. Defendant Va'a brought Plaintiff Doe 8 headphones upon her request.

76.     On or about August 15, 2015, on the third watch, Plaintiff Doe 8 and Plaintiff Va'a had sexual relations in the control station next to the refrigerator while another ACO went outside to smoke. An inmate was engaged to act as a lookout for incoming ACOs. Defendant Va'a inserted his fingers in Plaintiff Doe 8's vagina and performed oral sex on her. Plaintiff Doe 8 then performed oral sex on Defendant Va'a and swallowed his semen.

77.     Between September 1, 2015 and October 17, 2015, Plaintiff Doe 8 was in lock-down and Defendant Va'a would visit Plaintiff Doe 8 at her cell. Defendant Va'a would masturbate in front of Plaintiff Doe 8's cell and would make her place her hands through the hatch while he rubbed his erect penis on her hands. Defendant Va'a would ejaculate on Plaintiff Doe 8's hands and have her lick the sperm off of her hands.  When Defendant Va'a served Plaintiff Doe 8 lunch or dinner at her cell Defendant Va'a demanded that Plaintiff Doe 8 was naked and he would grab Plaintiff's vagina and rub it, or would fondle her breasts.

78.     In or about the first week of December 2015 on second watch, Plaintiff Doe 8 went to the control room and Defendant Va'a placed his hands in Plaintiff's pants and inserted his fingers in her vagina while he was kissing her.

The same day, on the third watch, Plaintiff Doe 8 remained at the control room with Defendant Va'a while another ACO left to take other inmates to the medication line. Plaintiff Doe 8 went into the staff bathroom and, at Defendant Va'a's request, removed her pants. Defendant Va'a entered the bathroom and received oral sex from Plaintiff Doe 8.

79.    In exchange for Plaintiff Doe 8's sexual activities, Defendant Va'a provided contraband, including crystal methamphetamine, smoking paraphernalia, coffee, makeup, a lighter and injection needles.

80.    Plaintiff Doe 8, along with her cell mate, Plaintiff Doe 9, used the crystal methamphetamine received from Defendant Va'a for four days and soon thereafter, and as a direct result thereof, Plaintiff Doe 9 attempted suicide by hanging herself in the cell she shared with Plaintiff Doe 8.

**PLAINTIFF DOE 9**

81.    For the relevant time period on or about September 2015 through December 2015, Plaintiff 9 was an inmate at WCCC.

82.    Defendant Va'a, a male ACO, was employed at the WCCC during that time.

83.    Defendant Tanaka was the warden at WCCC at that time.

84.    In or about December 2015 Plaintiff Doe 9 shared a cell with Plaintiff Doe 8. Plaintiff Doe 9 was returning from her shower when she observed

Plaintiff Doe 8 performing oral sex on Defendant Va'a and observed Defendant

Va'a performing oral sex on Plaintiff Doe 8. Defendant Va'a and Plaintiff Doe 8

knew that Plaintiff Doe 9 saw them having oral sex.  Plaintiff Doe 9 said nothing to

anyone about what she saw.

85.    In exchange for Plaintiff Doe 9's silence about the observed  sexual

activities, Defendant Va'a provided contraband to Plaintiff Doe 8, including crystal

methamphetamine, smoking paraphernalia, coffee, makeup, a lighter and injection

needles, that was to be shared with Plaintiff Doe 9.

86.    Plaintiff Doe 8 and her cell mate, Plaintiff Doe 9, used the crystal

methamphetamine received from Defendant Va'a for four days and soon thereafter,

on or about December 24, 2015,  Plaintiff Doe 9 attempted suicide by hanging

herself in her cell.

87.    Plaintiff Doe 9 was transported to The Queens Medical Center in

critical condition and placed on life support. She was partially paralyzed from the

neck down and on a feeding tube.  Plaintiff Doe 9 remained at Queens Medical

Center for three weeks during which time she was in rehabilitation, learning how to

function again.

88.    During Plaintiff Doe 9's stay at The Queens Medical Center,

Defendant Va'a was  assigned to guard her, much to Plaintiff Doe 9's shock and

dismay. Defendant Va'a was present in Plaintiff Doe 9's hospital room the majority

of the time she was at The Queens Medical Center. Defendant Va'a pressured Plaintiff Doe 9 during the three weeks she was in the hospital not to report that he, Defendant Va'a, was having sexual relations with Plaintiff Doe 8 in her cell or that he, Defendant Va'a, provided crystal methamphetamine and paraphernalia to Plaintiff Does 8 and 9.

89.    Plaintiff Doe 9 was partially paralyzed and incapacitated during her three weeks at The Queens Medical Center and could not object to Defendant Va'a being present in her hospital room. His presence caused her undue stress, emotional trauma and outright fear for her life.

90.    Plaintiff Doe 9 has suffered, in addition to her emotional trauma, physical damages from her trauma, including but not limited to permanent brain damage and nerve damage.

### PLAINTIFF DOE 10

91.    For the relevant time period on or about November 21, 2016 through November 23, 2016, Plaintiff Doe 10 was an inmate at WCCC.

92.    Defendant Sinatra, the Supervisor of the Janitorial Workline, was employed at the WCCC during that time.

93.    Defendant Eric G. Tanaka was the warden at WCCC at that time.

94.     On or about  November 21, 2016 to November 23, 2016, Plaintiff Doe 10 was assigned to the janitorial workline under the supervision of Defendant Sinatra.

95.     Plaintiff Doe 10 was in the workline and under the direction and control of Defendant Sinatra on November 22, 2016 when he approached her and told her how much he admires her, respects her and how he could take good care of her if she were in his life.  Plaintiff Doe 10 felt immediate distress as a result of his suggestions and left the area as soon as possible.

96.     On November 23, 2016, while on work duty at WCCC, Defendant Sinatra called Plaintiff Doe 10 into his office and exposed his penis to her, asking Plaintiff Doe 10 if it will make her happy. Plaintiff Doe 10 suffered immediate distress and ran out of his office. Defendant Sinatra followed Plaintiff Doe 10 out of his office, cornered her and told her not to tell anyone about what he said or did. Defendant Sinatra informed Plaintiff Doe 10 that he was friends with the warden and with the ACOs and that no one would believe her if she reported his exposure because she was "just an inmate."

## COUNT I – 42 U.S.C. 1983

97.     Plaintiffs re-allege and incorporate by reference paragraphs 1-96.

98.     Defendant State of Hawaii failed to properly screen, hire, train, or supervise their employees and guards, including, but not limited to allowing female

inmates one-on-one contact with male guards, allowing inmates to remain in the control room with guards for extended periods of time and failing to enforce reporting of ongoing sexual activities between inmates and guards and employees and guards.

99.     Defendant State of Hawaii failed to provide procedures and premises that insure the safety of the women prisoners under their care and control, including, but not limited to allowing female inmates one-on-one contact with male guards, allowing inmates to remain in the control room with guards for extended periods of time, failing to enforce reporting of ongoing sexual activities between inmates and guards and employees and guards and failure to investigate and follow up on reported sexual activities and violations.

100.    Defendant State of Hawaii had notice of potential for problems using poorly trained and supervised male guards and female guards to supervise female prisoners dating back to at least 1992 when 22 cases of alleged sexual misconduct were investigated, including an alleged prostitution ring run by WCCC guards, leading to the dismissal of at least 5 guards. In 2002, ten years later, due to ongoing sexual abuse in WCCC, the State contracted with the Sex Abuse Treatment Center to develop and implement an educational program to help prevent staff-inmate sexual conduct. A study was conducted at that time pursuant to the ongoing sexual

abuse and study participants asserted that 20% of the guards have sexual contact

with inmates and that other ACO's and inmates were aware of the contact.

101.    In 2003 Hawaii adopted the "Prison Rape Elimination Act" (PREA),

45 U.S.C. 15601, a federally mandated law enacted to address a prison sex-crisis

reaching endemic proportions.  The goal of PREA is to prevent, detect, and

respond to sexual abuse/assault and sexual harassment within confinement settings.

PREA establishes a zero tolerance policy for sexual abuse/assault and sexual

harassment.

102.    On August 20, 2013, all correctional agencies in the United States

were required to be compliant with the PREA standards.  Agencies must

demonstrate zero tolerance not merely by words and written policy, but through

their actions, including what they do to prevent sexual abuse/assault and sexual

harassment in order to comply with the PREA standards.

103.    In 2014, according to the Hawaii 2014 Prison Rape Elimination

Report, ten (10) staff-on -offender sexual abuse or harassment complaints were

filed by inmates at WCCC, with four (4) cases remaining under investigation.

104.    In 2015, the Prison Rape Elimination Report indicated an ongoing

pattern and practice of rampant sexual abuse of inmates by prison guards at

WCCC, with seven (7) allegations of sexual activity and three (3) confirmed

claims. Two (2)  claims remain under investigation.

105.    Defendant State of Hawaii failed to set up adequate procedures and practices to monitor their ACO's and employees when supervising female prisoners, despite a 25 year history of documented sexual abuse at WCCC and an adoption of federally mandated PREA rules and regulations.

106.    The actual design of the Olomana control room facility lends itself to sexual abuse due to the direct observation of the shower room by the control room. Male guards can watch the female prisoners taking showers. The configuration does not allow for the female inmates to have any privacy or to be free from naked observation.

107.    Guards at WCCC are not searched as they enter the facility and are allowed to enter the facility carrying contraband, including methamphetamine, drug paraphernalia, makeup, clothing, food and other items. No changes in the procedures were implemented, thus allowing for the constant flow of illicit goods into WCCC. The tragic results of the policies and procedures are the ongoing sexual activities and the attempted suicide aforementioned herein.

108.    Defendants, each of them, through their own actions, acted to cause the harm to Plaintiffs by ignoring obvious and ongoing sexual abuse at WCCC.

109.    Defendants, each of them, acted under color of law, confining Plaintiffs, sexually assaulting them, providing them with contraband and promising them financial support or threatening them with retribution.

110.    Defendants Espinda and Tanaka are the final policy/rule maker for the Department of Public Safety and WCCC respectively. Each could have individually changed the policies and procedures which were the cause of Plaintiffs' injuries.

111.    Defendants, each of them, through the acts and omissions outlined above were the proximate cause of Plaintiffs' injuries.

112.    Defendants, each of them, acted under color of law.

## COUNT II –Eighth and Fourteenth Amendments

113.    Plaintiffs re-allege and incorporate by reference paragraphs 1-112.

114.    The high incidence of sexual assault within WCCC involves actual violations of the United States Constitution by Defendants. Defendants practice deliberate indifference to the ongoing sexual assaults and indifference to the substantial risk of sexual assault at WCCC, violating inmate's rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment. The Eighth Amendment rights of Hawaii's inmates are protected through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

## COUNT III –Fourth and Fourteenth Amendments

115.    Plaintiffs re-allege and incorporate by reference paragraphs 1-114.

116.    Prison inmates in Hawai'i have a reasonable expectation of privacy, to be free from forced bodily intrusion. Defendant's practice and acceptance of sexual assault is not reasonably related to any legitimate penological interests. Defendants practice deliberate indifference to the ongoing sexual assaults and indifference to the substantial risk of sexual assault at WCCC, violating Plaintiffs' and Hawaii's inmate's rights to privacy under the Fourth and Fourteenth Amendments to the Constitution of the United States.

## COUNT IV – Negligence

117.    Plaintiffs re-allege and incorporate by reference paragraphs 1-116.

118.    Defendants Espinda, Tanaka, Freitas, Magalei, Bauman, Va'a and Sinatra and each of each of them, were negligent in their actions, omissions, and failures to institute or adhere to proper policies and procedures.

119.    Defendants Espinda, Tanaka, Freitas, Magalei, Bauman, Va'a and Sinatra had a duty to insure the safety of Plaintiffs while incarcerated.

120.    Defendants Espinda, Tanaka, Freitas, Magalei, Bauman, Va'a and Sinatra breached their duty to insure the safety of Plaintiffs while incarcerated.

121.    Defendants Espinda, Tanaka, Freitas, Magalei, Bauman, Va'a and Sinatra breached their duty to insure Plaintiffs' safety while incarcerated, and that breach was the direct and proximate cause of Plaintiffs' harm.

122.    Defendants Espinda, Tanaka, Freitas, Magalei, Bauman, Va'a and Sinatra could reasonably have foreseen the traumatic consequences of their negligence, especially given that up to 49% of incarcerated women have suffered sexual abuse prior to entering confinement and that sexual demands upon inmates while incarcerated are emotionally traumatizing.

### COUNT V – Negligent Hiring, Training and Supervision

123.    Plaintiffs re-allege and incorporate by reference paragraphs 1-122.

124.    Defendants Espinda and Tanaka are responsible for the planning and supervision of the screening, hiring, training and supervision of ACOs and employees at WCCC.

125.    Defendants Espinda and Tanaka, through their respective departments, actions and inactions, failed to properly screen, hire, train or supervise Defendant ACO's and employees.

126.    Defendants Espinda and Tanaka's actions and inactions were the proximate cause of Plaintiff's injuries by and through their failure to properly screen, hire train or supervise Defendant ACO's and employees.

127.    Defendants State of Hawaii is responsible through the doctrine of Respondeat Superior for the Plaintiffs' injuries.

### COUNT VI – Assault & Battery

128.    Plaintiffs re-allege and incorporate by reference paragraphs 1-127 .

129.    Defendants, each of them, either actually or by complicity, are responsible for the sexual assaults of Plaintiffs, which occurred at WCCC.

## COUNT VII – Intentional Infliction of Emotional Distress

130.    Plaintiffs re-alleges and incorporates by reference paragraphs 1-129.

131.    Defendants Freitas, Magalei, Bauman ,Va'a and Sinatra actually knew their actions would cause Plaintiffs severe emotional distress, and acted with wanton disregard of the rights of Plaintiffs.

132.    Plaintiffs reserve the right to allege this same cause of action against Defendant Tanaka and Espinda upon discovery.

133.    As a direct and proximate result or Defendants actions, Plaintiffs sustained severe emotional distress.

## COUNT VIII – Negligent Infliction of Emotional Distress

134.    Plaintiffs re-allege and incorporate by reference paragraphs 1-133.

135.    Defendant, each of them, acted with negligent disregard for care and welfare of Plaintiffs.

136.    Defendants, and each of them, owed Plaintiffs a duty of care.

137.    As a direct and proximate result of  Defendants actions Defendants breached that duty, and Plaintiffs sustained severe emotional distress.

## COUNT IX – False Imprisonment

138.     Plaintiffs re-allege and incorporate by reference paragraphs 1-137.

139.     Defendants, each of them, either actually or by complicity, caused Plaintiffs to be restrained against their will and by force of coercion.

140.     Defendants, each of them, by and through their actions, omissions, or failures to act were the direct and proximate cause of Plaintiffs' injuries.

## COUNT X – Punitive Damages

141.     Plaintiffs re-allege and incorporate by reference paragraphs 1-140.

142.     Defendants  Espinda, Tanaka, Freitas, Magalei, Bauman,Va'a  and Sinatra, individually, jointly, separately or collectively participated in, and/or omitted to perform acts legally required of them in deliberate indifference to a substantial risk of serious harm to Plaintiffs and or the deprivation of their liberty interests and rights and/or acted with a willful and wanton disregard for the rights and liberties of Plaintiffs or others so situated.

WHEREFORE, Plaintiff prays for relief as follows:

1.     For general damages in an amount to be proven at trial;

2.     For special damages including consequential damages in an amount to be proven at trial;

3.     For punitive damages in an amount sufficient to deter similar behavior;

4.       For reimbursement of costs and expenses herein, including a

reasonable provision for attorneys' fees;

5.       For pre and post judgment interest; and

6.       For such further and additional relief as the Court deems

appropriate and just.


Dated:  Honolulu, Hawaii_____March 30_____, 2017


MYLES S. BREINER
Attorney for Plaintiffs