IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEINETTE KAINOA REYES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF HAWAII, et al.,<br><br>Defendants. | CIVIL NO. 17-00143 JAO-KJM<br><br>ORDER DENYING BALANCE OF DEFENDANTS STATE OF HAWAII, NOLAN ESPINDA AND ERIC G. TANAKA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I-V, VIII, AND XI OF THE THIRD AMENDED COMPLAINT |

**ORDER DENYING BALANCE OF DEFENDANTS STATE OF HAWAII, NOLAN ESPINDA AND ERIC G. TANAKA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I-V, VIII, AND XI OF THE THIRD AMENDED COMPLAINT**

This action concerns the alleged sexual assault of female inmates at the Women's Community Correctional Center ("WCCC"). The Court previously granted in part and deferred in part Defendants State of Hawaii (the "State"), Nolan Espinda ("Espinda"), and Eric Tanaka's ("Tanaka[']s]") (collectively, "State Defendants[']") Motion for Partial Summary Judgment on Counts I to V, VIII, and XI of the Third Amended Complaint, ECF No. 121. *See* ECF No. 178. This Order addresses the portion of the Motion for Partial Summary Judgment that the Court deferred pending the submission of additional evidence and supplemental briefing;

namely, Tanaka's request for summary judgment as to Plaintiffs' 42 U.S.C. § 1983 claims. For the following reasons, the Court DENIES the balance of the Motion.

BACKGROUND

I. Factual History

Plaintiffs Leinette Kainoa Reyes; Dana K.A. Baba; Darnell K. Maluyo; Artemio Panlasigui, individually and as personal representative of the estate of Dawnielle C. Panlasigui, deceased, and as next friend to A.P., a minor; Tiana M. Soto; Maelene Cruz; Monica J. Alves Peralto; Shawna L. Tallman; Reyna M. Banks; and Victoria Suanoa-Piper (collectively, "Plaintiffs") allege that while incarcerated, they were regularly sexually assaulted by four Adult Correctional Officers ("ACOs") and one civilian employee. ECF No. 51 at 3–4. Plaintiffs allege that these assaults often occurred in the WCCC Control Stations. *Id.* ¶¶ 34–90. Plaintiffs allege multiple instances of inappropriate touching, forcible oral sex, digital penetration, and vaginal intercourse with the promise of privileges. *Id*. Plaintiffs allege that as a result of the fear and anxiety caused by these sexual assaults, Plaintiff Dawnielle Pawnlasigui committed suicide. *Id.* ¶¶ 58–59. Plaintiffs allege that the State, Espinda (as Director of the Department of Public Safety ("DPS")), and Tanaka (as warden of WCCC) failed to supervise their employees and condoned a culture, pattern, and policy of sexual abuse given the prevalence of the assaults and the similar attendant circumstances. *Id.* ¶¶ 91–123.

Plaintiffs further allege that Espinda, Tanaka, and the ACOs seduced them with promises of marriage; all Defendants were responsible for Plaintiffs' sexual assaults; and all Defendants caused Plaintiffs to be restrained against their will and by force of coercion. *Id.* ¶¶ 125, 139, and 158.

As warden of WCCC, Tanaka is responsible for upholding DPS policies and procedures, ensuring the safety and security of WCCC inmates, and protecting WCCC staff and the public. Defs.' Concise Statement of Facts ("CSF"), ECF No. 122 ¶ 4; Decl. of Eric G. Tanaka ("Tanaka Decl."), ECF No. 122-1 ¶ 4. The DPS Office of Training and Staff Development trains all new corrections officer recruits and nonuniform staff before they are assigned to a facility. Defs.' CSF ¶ 6; Tanaka Decl. ¶ 6. Training covers DPS policies and procedures regarding the Prison Rape Elimination Act ("PREA") and WCCC staff receive necessary on-the-job training. Defs.' CSF ¶ 7; Tanaka Decl. ¶ 7. Every two years, WCCC staff are required to attend a PREA refresher course and Tanaka is responsible for ensuring compliance. Defs.' CSF ¶ 7; Tanaka Decl. ¶ 7.

All reports of sexual assault at WCCC are investigated pursuant to ADM.08.08. Defs.' CSF ¶ 10; Tanaka Decl. ¶ 10. Tanaka disclaims involvement in the sexual assaults and maintains that he lacked awareness of the sexual assaults until after they were reported to WCCC staff, at which time investigations were conducted. Defs.' CSF ¶ 10; Tanaka Decl. ¶ 10.

Plaintiffs allege that the conditions and understaffing at WCCC facilitated the sexual assaults by the ACOs. Pls.' CSF, ECF No. 137 ¶ 24; Decl. of Leinette Reyes ("Reyes Decl."), ECF No. 137-2 ¶ 11; Decl. of Shawna Tallman ("Tallman Decl."), ECF No. 137-3 ¶¶ 18–20; Pls.' Supp. CSF, ECF No. 167 ¶ 24; Decl. of Monica Peralto ("Peralto Decl."), ECF No. 167-1 ¶ 4; Decl. of Tiana Soto ("Soto Decl."), ECF No. 167-2 ¶ 6. When WCCC experienced understaffing, three officers were on duty, as opposed to five. Pls.' CSF, ECF No. 137 ¶¶ 7–5. Moreover, understaffing meant that WCCC had one roving officer in a unit instead of two. *Id.* ¶ 21, Tallman Decl. ¶ 19. And when the Sergeant was not on duty, ACO Taofi Magalei became acting Sergeant, which is how he had the opportunity to sexually assault Plaintiffs in the control station. Pls.' CSF ¶ 21; Tallman Decl. ¶ 20. According to Plaintiffs, it is widely known that neither the control stations nor the areas immediately outside the control stations contain video cameras. Pls.' CSF ¶ 23; Tallman Decl. ¶ 21; Reyes Decl. ¶ 11; Baba Decl. ¶ 40; Pls.' Supp. CSF, ECF No. 167 ¶ 23; Peralto Decl. ¶ 7; Soto Decl. ¶ 7.

Plaintiffs contend that Tanaka knew about these issues because of a prior lawsuit—*Smith v. State of Hawaii*, Civil No. 14-00432 LEK-KSC—involving a WCCC inmate who was sexually assaulted by an ACO. Pls.' Supp. CSF, ECF No. 167 ¶ 16; Ex. F to Pls.' Supp. CSF, ECF No. 167-16.

4

II.  Procedural History

Plaintiffs commenced this action on March 30, 2017.  On July 26, 2017, Plaintiffs filed their Second Amended Complaint, ECF No. 24, which was dismissed by stipulation on November 15, 2017.  ECF No. 44.  Plaintiffs filed their Third Amended Complaint ("TAC") on October 19, 2018.  ECF No. 51.  The TAC asserts the following claims:  (1) violations of 42 U.S.C. § 1983 (Counts I to IV); (2) seduction (Count V); (3) negligence (Count VI); (4) negligent hiring, training, and supervision (Count VII); (5) assault and battery (Count VIII); (6) intentional infliction of emotional distress (Count IX); (7) negligent infliction of emotional distress (Count X); (8) false imprisonment (Count XI); and (9) wrongful death (Count XII).  *Id.*  Plaintiffs pray for general, special, and punitive damages; reimbursement of costs and expenses; pre- and post-judgment interest; injunctive and declaratory relief; and any additional relief deemed appropriate.  *Id*. at 37.

On April 18, 2019, the Court issued an Order Granting in Part and Denying in Part Defendants State of Hawaiʻi, Nolan Espinda, and Eric Tanaka's Motion to Dismiss Third Amended Complaint Filed on October 18, 2018.  ECF No. 71.  The Court dismissed Counts I to IV with prejudice against the State Defendants and denied the motion with respect to Counts I to IV against Tanaka in his individual capacity and as to Counts V to XII against all Defendants.  *Id.* at 16.

5

On December 13, 2019, the Court issued an Order Granting in Part and Deferring in Part Defendants State of Hawaii, Nolan Espinda, and Eric G. Tanaka's Motion for Partial Summary Judgment on Counts I to V, VIII, and XI of the Third Amended Complaint ("SJ Order"). ECF No. 178. The Court: (1) dismissed with prejudice (a) Plaintiffs' state law claims (Counts V to VIII, X to XII) against Tanaka and Espinda in their official capacities and (b) Plaintiffs' state law claims (Counts VII, VIII, X, XI, and XII) against the State; (2) granted summary judgment as to Plaintiffs' seduction (Count V), assault and battery (Count VII), and false imprisonment (Count XI) claims against Tanaka in his individual capacity; and (3) deferred ruling on the § 1983 claims (Counts I to IV) against Tanaka in his individual capacity. *Id.* at 13.

LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a

6

motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631-32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

## DISCUSSION

Tanaka seeks summary judgment on Plaintiff's § 1983 claims (Counts I to IV) asserted against him in his individual capacity. Tanaka argues that he is not liable because (1) he was not personally involved in the sexual assaults and (2) there is no causal connection between his conduct and the sexual assaults. *See*

8

ECF No. 121-1 at 16. Alternatively, Tanaka contends that he is shielded by qualified immunity. *See id.* at 17.

Plaintiffs counter that Tanaka knew—or at a minimum that questions of fact regarding his knowledge exist—about safety and security issues such as lack of cameras in the control room, non-functional cameras within WCCC, understaffing, and the ACOs' sexual abuse of inmates.

A. <u>Supervisory Liability under § 1983</u>

Supervisors may be held liable under § 1983 if (1) they were personally involved in the constitutional deprivation or (2) there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted). A causal connection may be established by the following:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others."

*Moss v. U.S. Secret Serv.*, 711 F.3d 941, 967 (9th Cir. 2013), *rev'd on other grounds, Wood v. Moss*, 572 U.S. 744 (2014) (footnote and citation omitted).

Tanaka emphasizes that he was not personally involved in the sexual assaults, and that he only became aware after Plaintiffs reported the assaults to

9

WCCC staff. However, Plaintiffs proffer evidence that there are no cameras in the control stations where the sexual assaults purportedly occurred;[1] some cameras were non-operational; WCCC experienced staff shortages, which resulted in the closure of essential posts and/or the reassignment of male ACOs to posts that should be filled by females; and Tanaka had notice of the *Smith* case. Thus, it can be inferred that Tanaka was aware of the conditions present in the facility that did not provide adequate safety and security to the inmates, and that he failed to correct the conditions or supervise or control his subordinates. Both circumstances can establish a causal connection between his conduct as warden and the alleged constitutional violations. *See Moss*, 711 F.3d at 967. Viewing the facts in the light most favorable to Plaintiffs, the Court finds that questions of material facts exist as to Tanaka's supervisory liability under § 1983. Therefore, Tanaka's Motion is DENIED as to supervisory liability.

B.  Qualified Immunity

Federal and state officials are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation

---

[1] Tanaka admits that the control stations do not contain cameras. Defs.' Responsive CSF, ECF No. 180-1 ¶ 23.

omitted); *see Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) ("State officials have qualified immunity from civil liability under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (citation omitted)). The lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To reject a qualified immunity defense, courts "must find that 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.'" *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) (alteration in original) (citations omitted). In making such a determination, courts consider "the state of the law at the time of the alleged violation" and "the 'information possessed' by the officer to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal." *Id.* (citations omitted); *see Pearson*, 555 U.S. at 244 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). An officer's subjective beliefs are irrelevant. *See Inouye*, 504 F.3d at 712 (footnote and citation omitted).

The Court finds that, viewing the evidence in the light most favorable to Plaintiffs,[2] the alleged sexual assaults constitute violations of the Eighth Amendment and there is a genuine issue of material fact as to whether Tanaka violated Plaintiffs' Eighth Amendment rights by failing to take reasonable measures to address the substantial risk that Plaintiffs would be sexually assaulted. The Eight Amendment's prohibition on "cruel and unusual punishments" imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828 (citations omitted). Deliberate indifference requires an official to "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

---

[2] "For purposes of reviewing a grant or denial of summary judgment, even in a qualified immunity case, the reviewing court must assume the nonmoving party's version of the facts to be correct." *Schwenk v. Hartford*, 204 F.3d 1187, 1193 n.3 (9th Cir. 2000) (citation omitted).

As explained above, Plaintiffs provide evidence that there are no cameras in the control stations where the sexual assaults purportedly occurred; some cameras were non-operational; WCCC experienced staff shortages, which resulted in the closure of essential posts and/or the reassignment of male ACOs to posts that should be filled by females; and Tanaka had notice of the *Smith* case. Tanaka claims that although he learned of the *Smith* case shortly after his tenure commenced in 2014, he only recently became aware of the factual details of the case. ECF No. 180 at 5 (citing ECF No. 161-3 at 38). However, this does not exonerate him from liability. Rather, these issues of disputed fact require the Court to deny summary judgment on qualified immunity grounds.

Moreover, at the time of the alleged sexual assaults, the law clearly established that prison officials violate the Eighth Amendment when they fail to protect inmates from physical abuse. "In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise." *Schwenk*, 204 F.3d at 1197; *see also Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." (citations omitted)). A violent assault "in prison is

simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (citation omitted).

Because Plaintiffs' allegations establish a violation of their constitutional rights, and the rights were established at the time of the challenged conduct, Tanaka is not entitled to qualified immunity and the Court DENIES summary judgment on this basis. *See Schwenk*, 204 F.3d at 1196–98 (affirming denial of summary judgment on qualified immunity grounds where the plaintiff alleged an actual violation of her rights and "the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right" (alterations in original) (citation omitted)).

//

//

//

//

//

//

//

//

//

## CONCLUSION

In accordance with foregoing, the Court HEREBY DENIES the balance of Defendants' Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 2, 2020.

Jill A. Otake
United States District Judge

CV 17-00143 JAO-KJM; *Reyes, et al. v. State of Hawaii, et al.*; ORDER DENYING BALANCE OF DEFENDANTS STATE OF HAWAII, NOLAN ESPINDA AND ERIC G. TANAKA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I-V, VIII, AND XI OF THE THIRD AMENDED COMPLAINT