IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEINETTE KAINOA REYES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ERIC G. TANAKA, et al.,<br><br>Defendants. | CIVIL NO. 17-00143 JAO-KJM<br><br>AMENDED ORDER REGARDING THE IMPOSITION OF SANCTIONS AGAINST MYLES S. BREINER |

**AMENDED ORDER REGARDING THE IMPOSITION OF SANCTIONS AGAINST MYLES S. BREINER[1]**

Presently before the Court is the question of whether sanctions should issue against Myles S. Breiner, counsel for Plaintiffs, due to his inadvertent contact with a juror via LinkedIn through his cellular telephone during trial. For the reasons set forth below, the Court DECLINES to sanction Mr. Breiner but prohibits him from using any electronic devices in any future proceedings before it.[2]

---

[1] This Amended Order differs from the Court's April 3, 2020 Order Regarding the Imposition of Sanctions Against Myles S. Breiner in the following respects: documents referenced herein now have exhibit designations and those exhibits are attached.

[2] The Court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.1(c). COVID-19 limitations notwithstanding, the parties have had ample opportunity to present their positions in court and through written submissions.

## BACKGROUND

This action concerns the sexual assaults of female inmates at the Women's Community Correctional Center. The trial in this matter commenced with jury selection on February 10, 2020, during which Juror No. 1, a PhD candidate in psychology, was selected to serve.

After the sixth day of trial recessed on February 18, 2020, Juror No. 1 informed the Jury Clerk that she believed she had been contacted by someone associated with Plaintiffs via LinkedIn, a social networking platform focused on professional networking. The Jury Clerk informed the Courtroom Manager, who briefly spoke with Juror No. 1 before trial resumed on February 19, 2020. At the Court's direction, the Courtroom Manager asked Juror No. 1 if she was comfortable describing the contact in open court, and she requested a sidebar.

On the morning of February 19, 2020, the Court informed the parties outside the presence of the jury that Juror No. 1 reported that someone associated with Plaintiffs had contacted her via LinkedIn. The Court then conducted a sidebar with Juror No. 1; Terrance M. Revere, counsel for Plaintiffs; and Kathy K. Higham, counsel for Defendant. Juror No. 1 reported that the day prior, a person named Myles Breiner had attempted to connect with her through LinkedIn, but there was not a profile photo for the person with that name, so she was not sure if it was the same Myles Breiner who represents Plaintiffs.

2

The juror further explained that she has a basic LinkedIn account, and that she did not respond to the connection request. She then showed the Court and counsel at sidebar the LinkedIn request on her cellular telephone. At the Court's direction, the juror also forwarded the LinkedIn request via email to the Court. A redacted copy of the forwarded email is attached to this Order as Exhibit A.

The email sent from Juror No. 1 reflects the following:

- On February 18, 2020, at 2:26 p.m., while trial was still in session, Mr. Breiner sent Juror No. 1 a LinkedIn request to join her LinkedIn network, which read:

  Hi [Juror No. 1], I'd like to join your LinkedIn network.

  Myles Breiner
  United States[3]

- Beneath the above are two boxes that Juror No. 1 could have clicked: "View profile" and "Accept." She did not click "Accept." At sidebar, Juror No. 1 said that she clicked on "View profile," but that what appeared was generic.

Juror No. 1 stated that she could remain fair. Without objection from either party, the Court allowed Juror No. 1 to return to the jury. The Court admonished

---

[3] No one suggests that Mr. Breiner personally drafted this request. Rather, it appears to have been automatically generated.

3

Mr. Revere not to inform Mr. Breiner of what the juror said until after the Court had an opportunity to ask Mr. Breiner about what happened.

Later that morning, the Court informed Mr. Breiner that Juror No. 1 reported that she received a LinkedIn request from him. The Court directed him to file a declaration by the end of the day, indicating whether he or his staff made any efforts to contact Juror No. 1 through LinkedIn.

Mr. Breiner's first response in court was that he had not made any effort to contact Juror No. 1, and that he would say as much in his declaration. Later in court, however, he stated that he was reviewing comments made by the juror's students, and that he may have accidentally clicked on a button, but he thought that he had prevented the connection from happening. The Court then directed Mr. Breiner to address in his declaration why he reviewed students' comments regarding Juror No. 1 in the middle of trial.

Mr. Breiner filed his first declaration on February 19, 2020, and stated that at approximately 2:35 p.m. the day prior, he and Mea Mitchell, Mr. Revere's employee who sat behind counsel table at trial, "were discussing the jurors' profiles in anticipation of closing arguments." ECF No. 338 ¶ 2. He then asked Ms. Mitchell for Juror No. 1's name, and he "initiated a Google Search, and as [he] was scrolling, [he] apparently inadvertently touched the 'Connect' button on Juror

No. 1's LinkedIn profile."[4] *Id.* ¶ 3. He claimed that when he did so, he "immediately terminated it." *Id.* ¶ 4.

After reviewing Mr. Breiner's first declaration, the Court instructed Mr. Revere to direct Ms. Mitchell to file a declaration after she had an opportunity to read Mr. Breiner's first declaration. The Court also requested a supplemental declaration from Mr. Breiner because he failed to address in his first declaration why he examined Juror No. 1's student reviews during trial.

Ms. Mitchell's declaration is generally consistent with Mr. Breiner's first declaration. *See* ECF No. 340. Ms. Mitchell explained that Mr. Breiner asked her for Juror No. 1's name during witness testimony, and that he Googled her name and showed Ms. Mitchell Juror No. 1's LinkedIn profile page. *See id.* ¶¶ 3, 5, 6. When Ms. Mitchell returned to listening to the witness' testimony, Mr. Breiner drew her attention to a website on his phone that contained student reviews of Juror No. 1. *See id.* ¶ 7.

Mr. Breiner filed an Amended Declaration on February 19, 2020. ECF No. 341. In it, he stated:

> 2. On February 18, 2020, at approximately 2:35 p.m., Mr. Revere's office manager/paralegal, Mea Mitchell, and I were discussing the jurors' profiles in anticipation of closing arguments.

---

[4] The Court concludes that Mr. Breiner used his cellular phone to do so, as the Court observed him using his phone at approximately that time during trial, and the timestamp on the email received by Juror No. 1 corroborates this.

5

> 3. I was going to review each juror's profile, so I could assist in closing arguments and see if any of the jurors commented on this case. At my request, Ms. Mitchell provided me with Juror No. 1's full name. Because of Juror No. 1's education and profession, I believed she could have an impact on jury deliberation regarding the psychological effects of sex assaults.
>
> 4. I initiated a Google Search, and the first three results that were listed were: (1) Rate My Professors profile, (2) pdf posted by the University of Hawaii, and (3) LinkedIn profile.
>
> 5. I pressed the Rate My Professors link to see if Juror No. 1 taught classes relating to any matters arising in this case, as well as if students considered her fair and reasonable. Student comments were listed, and after quick review, I proceeded to the other search results.
>
> 6. When I clicked on the LinkedIn account, as I was scrolling, I apparently inadvertently touched the "Connect" button on Juror No. 1's LinkedIn profile.
>
> 7. When I realized I accidentally touched the "Connect" button, I immediately terminated it. No effort or attempt was made to communicate with Juror No. 1. I was not aware that my identification was automatically sent via LinkedIn.
>
> 8. I do not actively use LinkedIn, nor am I familiar with this program as I literally have no connections to anyone on this program.

*Id.*

The Court invited Defendant to file a memorandum stating his position on whether sanctions should be imposed. On March 5, 2020, Defendant filed a

Memorandum Regarding Whether Sanctions Should be Imposed against Myles S. Breiner ("the Defense Memorandum"). ECF No. 384.

In the Defense Memorandum, Defendant pointed to Local Rule 47.1 regarding the allowable forms of research into jurors, and the ways in which Mr. Breiner violated those rules. Defendant cited to an article in the Hawaii Bar Journal, and explained that "Mr. Breiner could only access Juror No. 1's LinkedIn account via his own LinkedIn account." *Id.* at 7. But Defendant does not apparently contest that Mr. Breiner's contact with Juror No. 1 was unintentional. ECF No. 384 at 8 ("To be fair . . . Mr. Breiner may not have been aware that he was required to have his own LinkedIn profile in order to search and view the profiles of other LinkedIn users. Similarly, Mr. Breiner claims his request to 'Connect' with Juror No. 1 on LinkedIn . . . was made inadvertently or accidentally."). Defendant "t[ook] no position with respect to the nature or amount of any sanctions other than to suggest that an appropriate sanction could take the form of a donation to a local organization dedicated to assisting victims of sexual assault." *Id.* at 9 (footnote omitted).

Mr. Breiner filed a Reply to Defendant Eric G. Tanaka's Memorandum Regarding Whether Sanctions Should Be Imposed against Myles S. Breiner. ECF No. 392. He contended that "[a] profile is not needed to search a person on LinkedIn." *Id.* at 3 (emphasis omitted).

7

## DISCUSSION

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). There are three sources for the Court's power to sanction attorneys who appear before it: Federal Rule of Civil Procedure Rule 11, 28 U.S.C. § 1927, and the Court's inherent power. *See Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). It is the third source that applies here.

When a court imposes sanctions pursuant to its inherent power, it must find that an attorney acted in bad faith, or engaged in behavior "tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted). Bad faith can include "willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."[5] *Fink*, 239 F.3d at 994. Courts therefore have the power to impose sanctions "when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Id.* at 992 (emphasis omitted). But inadvertent conduct is not a basis for sanction pursuant to the Court's inherent power. *See Zambrano v. City of Tustin*, 885 F.2d

---

[5] Courts sometimes refer to this delineation of bad faith as "recklessness plus." *See, e.g., Torres v. City of Madera*, Nos. Civ F 02-6385 AWI LJO, CV F 03-5999, 2006 WL 3257491, at *5 (E.D. Cal. Nov. 9, 2006) (citations omitted).

1473, 1485 (9th Cir. 1989) ("[T]he authority of the court to punish violations of local rules should be reserved for serious breaches. Because counsel's conduct was only inadvertent, this is not such a case.").

With this in mind, the Court evaluates: (1) Mr. Breiner's use of an electronic device in the courtroom; (2) Mr. Breiner's accidental contact with Juror No. 1 via LinkedIn; and (3) Mr. Breiner's representations to the Court regarding what happened.

1. Use of an Electronic Device

Mr. Breiner admits that he used his cellular telephone to search the internet for information about Juror No. 1 during trial and does not deny that he did so while a witness testified. He acknowledges that he examined Juror No. 1's LinkedIn profile, as well as other information discovered through his Google search, including her students' ratings of her on a "Rate My Professors" website.

This Court's General Civil Case Procedures ("General Order"),[6] which was brought to counsel's attention during the January 22, 2020 final pretrial conference, does not expressly prohibit attorneys from using digital devices to conduct research on jurors after jury selection. But when comparing Mr. Breiner's use of his cellular telephone here with the list of permissible and impermissible

---

[6] The General Order has since been amended, but not with regard to the use of electronic devices.

behavior in the General Order, Mr. Breiner's use of the cellular telephone to conduct juror research after jury selection falls closer to what is not permitted:

> Examples of such appropriate usage include: paralegals texting other staff regarding *immediate* witness logistics; lawyers using a legal research database to search for caselaw mentioned by opposing counsel; lawyers referring to notes on a tablet regarding arguments for the hearing. Examples of inappropriate usage include: *lawyers texting other litigation team members about courtroom events that do not require immediate attention*; lawyers emailing or communicating with family members about personal matters; *paralegals searching the internet to investigate witnesses who are on the stand.*

General Order (some emphases added). The premise of the General Order is clear from these examples: the use of a cellular telephone by lawyers or staff is permitted if it is necessary to the litigation in that moment. This was not one of those instances. Closing argument was not scheduled to take place that day; there was a witness on the stand; and so it was completely unnecessary for Mr. Breiner at that time to use his electronic device to conduct research on a juror already empaneled. The Court concludes that Mr. Breiner acted in contravention of the General Order.

2.    Accidental Contact with Juror No. 1 via LinkedIn

Mr. Breiner also admits that he "inadvertently touched the 'Connect' button" on Juror No. 1's LinkedIn page. The parties spend some time disputing whether Mr. Breiner must have been connected to LinkedIn in order to search for and view Juror No. 1's LinkedIn profile. *See* ECF No. 384 at 8; ECF No. 392 at 3. The real

10

question, however, is whether Mr. Breiner could have sought to *connect* to Juror No. 1 via LinkedIn without having a LinkedIn account. The Court's own independent research leads it to conclude that the answer to that question is no. But it appears that Mr. Breiner could have previously logged into his LinkedIn account on his phone without logging out when he started his Google search and so had the ability to hit the Connect button. The Court therefore finds that Mr. Breiner did attempt to contact Juror No. 1 through his LinkedIn account, albeit unintentionally.

Local Rule 47.1(b) plainly prohibits research of jurors via social media websites under the circumstances here:

> (b) Attorneys may use websites available to the public, including social media websites, for juror or prospective juror research, provided:
>
> . . .
>
> (2) The attorney does not send an access request to a juror's social media accounts;
>
> (3) No direct communication or contact occurs between the attorney and a juror or prospective juror as a result of the research, including, but not limited to . . . LinkedIn 'connections' requests . . . ;
>
> (4) Social media research is done anonymously. A search on a social media site must not disclose to the juror or prospective juror the identity of the party who is making the inquiry[.]

Local Rule 47.1(b). While the Court finds that Mr. Breiner did not intentionally contact a juror, the fact that he was unaware that he was logged into LinkedIn reveals a degree of recklessness with regard to the rule. Any attorney endeavoring to comply with the Local Rules would not have put himself or herself in the same position because it risks accidental contact, which is exactly what happened here.[7]

### 3. Representations to the Court Regarding What Happened

Finally, Mr. Breiner's verbal and written statements to the Court were neither complete nor forthright. Hawai'i Rule of Professional Conduct 3.3(a)(1) cautions that a lawyer "shall not knowingly . . . make a false statement of material fact or law to a tribunal[.]"

Upon realizing in the moment that he accidentally hit the Connect button, Mr. Breiner did not inform the Court at the earliest opportunity—which was at the end of trial that day—that he had done so. Self-reporting of this incident would have demonstrated some effort to rectify a violation of Local Rule 47.1—even if inadvertent—and dispensed with the need to conduct additional proceedings, submit additional written submissions, and issue this Order. Having attempted to terminate the connection, Mr. Breiner obviously knew that he may have

---

[7] Based on its colloquy with Juror No. 1 at sidebar, the Court deemed her credible and finds that Mr. Breiner's conduct did not influence her in any way. Had the Court believed the contact influenced her, the Court would have excused her from the jury and imposed more severe consequences on Mr. Breiner.

12

accidentally contacted the juror, and his duty of candor to the Court should have compelled him to voluntarily report it.

Even if he had not initially discerned that he had failed in his effort to terminate the connection request, surely he would have realized it when the Court informed him the next day that the juror reported receiving such a request. But upon learning about Juror No. 1's disclosure, Mr. Breiner first denied any effort to contact her and did not immediately admit that he may have inadvertently contacted her.

Mr. Breiner's statement that he "do[es] not actively use LinkedIn" might be true, but his claim that he "literally [has] no connections to anyone on this program" is easily refuted by a search for Mr. Breiner on LinkedIn, which shows two profiles for him: one identifying him as Myles S. Breiner, which contains his image and his professional history—for which he has no connections, and one identifying him as Myles Breiner, which does not contain his image and offers little information about him—for which he has 12 connections.[8] Based on the email provided by Juror No. 1, Mr. Breiner contacted her through the latter profile. In any event, even if Mr. Breiner was completely unaware that he had 12

---

[8] This information was derived from searches conducted on February 19, 2020. The results of those searches are attached to this Order as Exhibit B.

13

connections through one of his profiles, he should have at least double-checked his LinkedIn status before submitting two declarations about it.

Mr. Breiner also claims that he conducted this research to assist in preparation for Mr. Revere's closing argument, which was not scheduled to begin any earlier than the following day, and in fact did not take place until two days later. *See* ECF No. 345. While the Court has no factual basis on which to find this assertion incredible, the purpose for conducting research on Juror No. 1 while in court—with a witness on the stand—escapes the Court. Even less comprehensible is the contention that he reviewed student reviews of Juror No. 1 in an effort to determine whether she was reasonable. This is the sort of research that might make sense during jury selection, but makes little sense once the juror has been selected.

While the Court does not conclude that Mr. Breiner attempted to intentionally mislead the Court, it is concerned by the recklessness with which Mr. Breiner acted and approached his reporting to the Court. "An attorney does not simply act as an advocate for his client; he is also an officer of the court. As such, an attorney has a duty of good faith and candor in dealing with the judiciary." *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1346 (9th

Cir. 1985) (citation omitted). Simply put, Mr. Breiner did not meet the standards expected of counsel who appear before this Court.[9]

Each of these acts fall somewhere between negligent or inadvertent conduct and "recklessness plus." But the recklessness here does not rise to the level of bad faith seen in other cases where sanctions are affirmed. *See, e.g., B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1098, 1108 (9th Cir. 2002) (affirming inherent power sanctions where attorney's "reckless *and* knowing conduct" included introducing

---

[9] Although the Court does not rely on the following, it observes that Mr. Breiner's other conduct in the course of the trial and thereafter has been less than professional. During trial, the Court witnessed Mr. Breiner on his cellular telephone far more often than other attorneys in this trial or in other trials. The Court gave Mr. Breiner the benefit of the doubt and did not mention it to him because the Court's General Order allows attorneys to use digital devices under the circumstances listed above. The Court is now understandably suspicious as to whether Mr. Breiner conducted himself in accordance with the General Order—or at the very least, the spirit of it.

Mr. Breiner had to be admonished more than once for distracting behavior during the course of trial: first when the Court told him and Mr. Revere that their consultations with one another during witness examinations were distracting, and second when the Court was forced to tell the attorneys not to greet witnesses leaving the stand, after observing Mr. Breiner blatantly flash a "thumbs up" signal to a non-client witness after she left the stand. Mr. Breiner also had to be told to sit down after a sidebar when the Court had issued its ruling and he continued to argue.

Even after trial, Mr. Breiner has continued to behave in an unprofessional manner. During a recent telephonic pre-filing conference with defense counsel concerning Defendant's Motion for Judgment as a Matter of Law, he shouted and used profanities. ECF No. 398-2 at 2.

15

evidence in violation of Federal Rule of Evidence 412 after representing that a witness would not discuss sexual acts between plaintiff and himself); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (affirming sanctions where state attorneys received and used attorney-client privileged communications and failed to advise the court until eight months later). The Court therefore concludes that sanctions are not warranted.

While the Court does not impose sanctions, exercising its authority to manage its proceedings and courtroom conduct, the Court PROHIBITS Mr. Breiner from using any electronic devices in any future proceedings before it, unless otherwise directed.

## CONCLUSION

For the foregoing reasons, the Court DECLINES to impose sanctions against Mr. Breiner, but PROHIBITS Mr. Breiner from using any electronic devices at any future proceedings until further notice.

//

//

//

//

//

//

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, April 6, 2020.



Jill A. Otake
United States District Judge

CV 17-00143 JAO-KJM; *Reyes, et al. v. Tanaka, et al.*; AMENDED ORDER REGARDING THE IMPOSITION OF SANCTIONS AGAINST MYLES S. BREINER