IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEINETTE KAINOA REYES, et al., | CIVIL NO. 17-00143 JAO-KJM |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT, SANCTIONS AND OTHER APPROPRIATE RELIEF |
| vs. | |
| ERIC G. TANAKA, et al., | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT, SANCTIONS AND OTHER APPROPRIATE RELIEF

Following a mistrial in this case, Plaintiffs seek sanctions against Defendant Eric G. Tanaka ("Tanaka") for his failure to produce critical discovery that he discussed for the first time during trial and for his counsel's assertions during his opening statement and closing argument that he would pay damages out of his own pocket. For the reasons articulated below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Default, Sanctions and Other Appropriate Relief. ECF No. 387.

<u>BACKGROUND</u>

As the Court and the parties are familiar with the extensive history in this case, the Court includes only those facts necessary for the disposition of this Motion.

A.    <u>Discovery Failures</u>

1.    <u>The Tanaka Deposition and Trial Testimony</u>

At his November 19, 2020 deposition, Tanaka testified that he had taken no steps to install cameras in the control rooms at the Women's Community Correctional Center ("WCCC"), where he is the Warden:

> Q.    . . . .
>
> In light of the allegations that have been made regarding this lawsuit and the various plaintiffs involved, have you considered whether to install cameras in the control stations?
>
> A.    Yes.
>
> Q.    Is there going to be further action to—you know, to—further action in terms of that, of trying to pursue it?
>
> A.    I'm not sure.
>
> Q.    Okay.  So, when you say you've considered it, is that just you personally you've considered it or have you communicated that to anybody else, you know, in terms of DPS or other staff at WCCC?
>
> A.    Other staff at WCCC.
>
> Q.    Okay.  But fair to say at this time you just—I guess are you saying that you are not going to pursue it?

> A.     It's something that always will be in my mind; and we
> have to weigh all the factors involved, employee privacy.  As I
> was mentioning, location, we always look at, feasibility of it,
> should we do it now knowing that we may get a new facility
> down the road, all those things.

Mot., Ex. 9 at 46:15–47:12.  When questioned about whether any steps were taken

to comply with the recommendation in a Prison Rape Elimination Act ("PREA")

audit regarding technology and cameras, Tanaka responded in the negative:

> Q.     Okay.  And in looking at those statements regarding
> technology and cameras and video monitoring, have you—in
> your time at WCCC has the facility done anything to implement
> or to comply with that particular suggestion?
>
> A.     No.

Id. at 50:16–21.

During his testimony at trial on February 11, 2020, Tanaka claimed, for the

first time, that he had in fact requested cameras and upgrades:

> Q.     In looking at [the PREA auditor's] statements regarding
> technology and cameras and video monitoring, have you, in your
> time at WCCC—has the facility done anything to implement or
> comply with that particular suggestion?
>
> A.     I know I've put in requests to have monies for cameras
> and upgrades.  I inquired with the PREA office for funding for
> cameras.  And I was told that that's not something that the PREA
> funds would pay for.
>
> Q.     Okay.  Going to your deposition, you were asked the
> following question:  "And in looking at those statements
> regarding technology and cameras and video monitoring, have
> you—in your time at WCCC—has the facility done anything to

3

implement or to comply with that particular suggestion?"  Your one word answer was no, correct?

      A.    Can you repeat that question again?

      Q.    Sure.  "And in looking at those statements regarding technology and cameras and video monitoring, have you—in your time at WCCC—has the facility done anything to implement or to comply with that particular suggestion?"  And your one word response on page 50 of your deposition was no, correct?

      A.    If that's what I have down, but that's an error.  I made a mistake.  I apologize for that.

      Q.    Okay.  And that was your testimony under oath, though, a couple of months ago, right?

      A.    Yes.

*Id.*, Ex. 11 at 147:7–148:6.  Additionally, both he and Cheyenne Evans ("Evans"), WCCC's then PREA compliance manager, testified during trial that Tanaka made funding requests for cameras, but budgetary constraints precluded repairs and upgrades at WCCC.  They both conceded that the e-mails and corresponding documents reflecting such requests were missing and so were not produced to Plaintiffs and were not exhibits at trial.

In response to this revelation, Plaintiffs filed a Motion for Sanctions for Spoliation of Evidence or Other Appropriate Relief ("Spoliation Motion"), wherein they requested:  (1) the entry of default, with the case proceeding exclusively as to damages; (2) the striking of Evans' and Tanaka's testimony regarding the requests

4

for cameras and purported budgetary shortcomings; or (3) the preclusion of any defense, argument, or testimony that despite Tanaka's due diligence in requesting cameras, his requests were denied and/or he had insufficient funding for cameras. ECF No. 323, Mem. in Supp. of Mot. at 2–3.  The Court struck Tanaka's and Evans' testimony regarding inadequate budget and read to the jury a curative instruction, which the parties jointly proposed:

> In this case any testimony presented by Mr. Tanaka or Ms. Evans regarding budgets as a defense is stricken and you should disregard such testimony.

ECF No. 360.  The Court provided this instruction to the jury verbally at trial and in writing during deliberations.

2.     Discovery Requests, the Buford Goff Report, and Outstanding Discovery

On July 26, 2019, Plaintiffs served Tanaka with their First Request for Production of Documents ("RPOD").  Mot., Ex. 10.  The RPOD included the following requests:

> 20.    Any and all documents related to sexual assault by guards on inmates at WCCC within the past ten years.
>
> . . . .
>
> 22.    Any and all documents related to efforts to fix problems with illegal sexual conduct inside WCCC within the past ten years.
>
> . . . .

5

26.    Any and all investigative reports, writings, documents, notes, memoranda or correspondence relating to the investigation or inquiry conducted by you regarding the incidents that are the subject of the lawsuit herein.

. . . .

30.    Documents you believe exculpate you and any other defendant from liability for Plaintiffs' injuries.

. . . .

33.    Documents that support any denial of liability or affirmative defense raised in your answer to the Complaint.

34.    Documents related to the instant action prepared by an expert or consultant.

. . . .

37.    Any and all communications with any witnesses to any of the events at issue in this matter.

*Id.* On the fifth day of trial, Tanaka produced a 2013 Buford Goff report ("Buford report"). This report, prepared by a consultant at the Department of Public Safety's ("DPS") request prior to the rapes that are the subject of this case, criticized WCCC's video recording system and offered solutions. According to Plaintiffs, Tanaka has yet to produce the details about why the Buford report was drafted, how it was drafted, and who was aware of it.[1] Plaintiffs also assert—and

---

[1] Such documents may have been produced after the filing of the Motion, but that does not affect this Order.

the defense does not deny—that Tanaka has not produced any e-mails regarding the rapes. *See* Mem. in Supp. of Mot. at 9–10.

B.      Statements Regarding Tanaka Paying Out of His Own Pocket

During Tanaka's opening statement and closing argument, defense counsel argued that he would bear personal responsibility for damages.  Plaintiffs' counsel did not object during Tanaka's opening statement.  During Tanaka's closing argument, defense counsel stated:

> Did terrible things happen to these women?  Yes, they did. But Tanaka had no knowledge, no information, that he could step in affirmatively ahead of that and do something to protect these women.  And for that reason, none of the claims of liability that he should take money out of his personal pocket to pay for—

Mot., Ex. 2 at 31:10–15.  Plaintiffs' counsel objected; the Court sustained the objection.  *Id.* at 31:16–18.  Plaintiffs did not move for a mistrial before the case went to the jury the same day.

After five days of deliberation, the jury informed the Court that it could not reach a unanimous verdict and the Court declared a mistrial.  It was not until the end of deliberations—once it became apparent that the jury would likely hang—or even after the Court declared a mistrial, that Plaintiffs' counsel expressed outrage about the statement and indicated that a motion for sanctions was forthcoming.

The present Motion followed.

<u>DISCUSSION</u>

Plaintiffs request a wide range of sanctions, including:

(1) Entry of default against Tanaka as to all claims.[2]

(2) Reimbursement of all trial-related expenses they incurred.

(3) An award of $100,000 to each Plaintiff personally, for a total of $600,000.

(4) Authorization to call an expert about the Buford report at the defense's expense.

(5) An order requiring defense counsel, Tanaka, Evans, Attorney General Clare Connors, Deputy Attorney General Marie Gavigan, and any paralegal who worked with the defense to supply declarations explaining:  (a) efforts to comply with discovery obligations; (b) the defense's failure to produce the Buford report until midway through trial; and (c) whether there are additional documents related to the Buford report.  If there are additional documents and/or documents related to funding based on the report or about cameras at WCCC, Plaintiffs request immediate production of the same.

(6) Authorization to re-depose Evans, Tanaka, and any other witnesses, including a Federal Rule of Civil Procedure ("FRCP") 30(b)(6) witness, at the State's expense, with respect to the untimely production of the documents.

(7) Leave to amend the Third Amended Complaint ("TAC") to:  (a) name Nolan Espinda in his individual and official capacities; (b) add equal protection claims; and (c) assert rights under *Dooley v. Reiss*, 736 F.2d 1392 (9th Cir. 1984), and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

(8) Authorization to identify and call additional expert witnesses to address outstanding documents, at the defense's expense.

---

[2]  Plaintiffs repeatedly reference the entry of default but based on their arguments, they actually seek default judgment.

(9) An order compelling the production of all documents listed in Jury Note No. 11.[3]

(10) Prohibitions, via the granting of motions in limine, of "out of own pocket," budget, and resource defenses.

(11) An instruction that should the jury find that any document is missing that the defense should have produced, it should draw the negative inference that the document is harmful to the defense.

Mem. in Supp. of Mot. at 23–25.

Plaintiffs rely on multiple legal bases for the requested sanctions:  the

Court's inherent powers to curb litigation abuse and spoliation of evidence, and

---

[3]  The jury requested the following documents in Jury Note No. 11:

> (1) WCC staffing plan; (2) timeline of ACO vacancies/Hires (e.g. when did ACO vacancies get filled?); (3) Warden's job description/responsibilities; (4) cover memo for the Buford report or any other documentation that the Warden received the report; (5) WCCC operating budget for 2014–2019; (6) WCCC operating expenditures for 2014–2019; (7) ACO performance reviews or any record of disciplinary actions against ACOs; (8) minutes of staff meeting w[ith] Warden and ACOs; (9) 2016 PREA report; (10) 2018 PREA report outbr[ie]f/notes; (11) control logs and clipboard; (12) list of documents requested by the prosecution received from the document; (13) Warden's order for no inmates in control station; (14) any documents that provide evidence to bolster the Warden's testimony that he took reasonable efforts to ensure the inmates['] saf[e]ty in other areas; (15) Documentary evidence of PREA orientation sessions; and (16) Warden's deposition.

ECF No. 369 (some formatting modified).

FRCP 26, 33, 34, and 37.[4]

A.    Missing Budget Documents and E-mails Referenced at Trial

Plaintiffs renew their request to enter default judgment against Tanaka for his failure to produce the e-mails he and Evans referenced during trial.  Mem. in Supp. of Mot. at 19.  But the Court has already imposed a sanction by precluding Tanaka from raising a budget defense, striking any related testimony, and instructing the jury that it should disregard any such testimony.  The mistrial does not affect the Court's sanction.  As discussed below, the Court reopens discovery, but the fact that Tanaka might ultimately produce all documents responsive to the RPOD does not ameliorate the need for the previously-imposed sanction and Tanaka should not benefit from his failure to produce such documents prior to trial. In other words, the Court's prior sanction that precluded Tanaka from raising a budget defense remains in effect for the new trial.

B.    Failure to Produce Existing Documents

Plaintiffs argue that because Tanaka withheld the Buford report until the fifth day of trial and Tanaka has not produced other relevant requested documents, default judgment should enter against Tanaka and the State should reimburse

---

[4]  Plaintiffs do not clearly delineate the sanctions requested for each category of objectionable conduct and the legal authority supporting sanctions for said conduct.  In fact, neither side addresses or applies the relevant legal provisions governing this dispute.

Plaintiffs for trial-related expenses, including attorneys' fees and costs.  In this context, Plaintiffs again ask the Court to preclude any budget or resource defenses[5] and to amend the TAC to add new claims.

1.     Discovery Sanctions Pursuant to FRCP 37

FRCP 37(c)(1)[6] addresses failures to comply with discovery obligations and provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and

---

[5]  Plaintiffs request orders granting motions in limine to prevent these defenses. Prohibiting the defense from supporting defenses or opposing claims pursuant to FRCP 37(b)(2)(A)(ii) would have the same effect, and is the proper authority under which, to assess the request at this time.

[6]  Tanaka argues that because he has not violated any discovery orders, sanctions pursuant to FRCP 37(b)(2) are unwarranted. This argument is without merit, as the Court assesses sanctions under FRCP 37(c), which authorizes the imposition of sanctions listed in FRCP 37(b)(2)(A)(i)–(vi).  *See* Fed. R. Civ. P. 37(c)(1)(C); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (concluding that violation of explicit court order not required to impose sanctions pursuant to FRCP 37(c)).

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1).  The orders identified in FRCP 37(b)(2)(A) include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi).[7]  The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti*, 259 F.3d at 1106 (citation omitted).  FRCP 37(c)(1) is described as a "'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material.'"  *Id.* (alteration in original) (citation omitted).  Bad faith or willfulness are not required to impose sanctions under FRCP 37(c).  *See id.*  The

---

[7]  Plaintiffs mistakenly rely on Rule 12.1(a)(6) of the Rules of the Circuit Courts of the State of Hawaiʻi to seek dismissal, entry of default, and other appropriate sanctions.  State circuit court rules are wholly inapplicable here.

two exceptions contained in FRCP 37(c)(1)—substantial justification and harmlessness—"ameliorate the harshness" of the rule.  *Id.*

In the present case, FRCP 37(c)(1) sanctions are warranted.  It is undisputed that the defense produced the Buford report on the fifth day of trial and have yet to produce documents that were the subject of testimony at trial, including e-mails about the rapes.  Neither of the above exceptions apply because Tanaka has not demonstrated that the defense's violations were substantially justified or harmless.  *See id.* at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove [that the exceptions apply].").

Tanaka faults Plaintiffs for submitting deficient discovery requests and failing to follow up on their requests.  He also contends that the unproduced documents were referenced at trial in response to Plaintiffs' theory that he failed to meet his duty of care because he did not install retail home security cameras in the control stations.  However, the foregoing justifications do not exculpate the defense from its violative conduct.

Although Plaintiffs unquestionably could have performed more proactively during the discovery process and availed themselves of the progressive remedies set forth in FRCP 37, the onus is not on Plaintiffs to request discovery they are unaware exists.  This is particularly true when Tanaka himself testified at his

13

deposition that he did nothing to implement or comply with the PREA auditor's recommendation that cameras be installed.

At the motion hearing, defense counsel urged the Court to conclude that the defense was not required to produce the Buford report in response to Request No. 22 of the RPOD ("documents related to efforts to fix problems with illegal sexual conduct inside WCCC within the past ten years") because DPS, not Tanaka, commissioned the report and Request No. 22 only covered Tanaka's PREA efforts. This is an unreasonably constrained reading of Request No. 22 that ignores FRCP 26(b)(1), which authorizes parties to "obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1) (emphasis added).

DPS sought advice about how to improve security at WCCC, and the Buford report suggested changes to the security camera system.  Because the Buford report is clearly relevant and responsive to Request No. 22, the defense should have produced it.[8]  But regardless of whether Plaintiffs' discovery requests covered the documents at issue, the defense was required to produce, at a minimum, "a copy—

---

[8]  The Court has before it less information about whether defense counsel made any effort to look for e-mails regarding the rapes, which would fall under Plaintiffs' request for "[a]ny and all investigative reports, writings, documents, notes, memoranda or correspondence relating to the . . . incidents that are the subject of the lawsuit herein."  Mot., Ex. 10 ¶ 26.  In any event, as outlined below, such discovery shall be produced.  What evidence may be derived from such e-mails or lack thereof will be a matter for another day.

or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). The defense was further obligated to supplement disclosures "in a timely manner if [it] learn[ed] that in some material respect the disclosure [was] incomplete or incorrect, and if the additional or corrective information ha[d] not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). It is inconceivable that the defense never contemplated, during the course of litigation, that the evidence it produced and/or discussed for the first time at trial might be used to support its defense. Indeed, the discovery that is the subject of this Motion was used exclusively for the purpose of defending Tanaka. Accordingly, the defense's failure to produce the foregoing discovery was not substantially justified.

The failure to produce the subject discovery was not harmless either. Tanaka explains that the defense's diligent post-trial efforts to obtain budget information regarding security cameras were thwarted by Governor Ige's shut-down of non-essential State services on March 17, 2020. But the restrictions and delays caused by COVID-19 do not and cannot exculpate the defense for its *past* violations of the discovery rules. Nor do post-trial good faith efforts to obtain and

produce documents except the defense from the strictures of FRCP 37. The fact that discovery can be produced, and any issues resolved before the new trial, does not diminish the harm caused by the defense's failure. Again, the conduct already occurred, and was revealed during trial. The failure certainly prejudiced Plaintiffs, though the Court declines to speculate as to whether the failure contributed to the mistrial. For these reasons, FRCP 37(c)'s substantial justification and harmless exceptions do not apply. [9]

Where, as here, the defense failed to provide information required by FRCP 26(a) and (e), FRCP 37(c)(1) prohibits it from using that information "to supply evidence . . . at a trial." Fed. R. Civ. P. 37(c)(1); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) ("Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." (citation omitted)); *Yeti*, 259 F.3d at 1106 ("Rule 37(c)(1) gives teeth to [FRCP 26(a)'s] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." (footnote omitted)).

---

[9] The Court is further disturbed by the undisputed statements by Plaintiffs' counsel that he found the Buford report sitting on his chair on the fifth day of trial without a cover letter or any explanation, and that his verbal and electronic requests for an explanation were met with silence. This failure to respond reflects at the very least a degree of unprofessionalism, and at worst, an acknowledgement of a discovery violation.

16

In addition, the Court may order the defense to pay reasonable expenses, including attorneys' fees, caused by the failure; may inform the jury of the failure; and may impose the sanctions listed in FRCP 37(b)(2)(A)(i)–(vi).  *See* Fed. R. Civ. P. 37(c)(1).  Plaintiffs ask that most of these sanctions be imposed.  The Court, considering the totality of the proceedings—both past and future—and the wide latitude FRCP 37(c)(1) confers, prohibits the defense from opposing Plaintiffs' claims/theories or supporting its defenses with the unproduced documents for the remainder of this case.  *See* Fed. R. Civ. P. 37(c)(1)(C); Fed. R. Civ. P. 37(b)(2)(A)(ii); *Yeti*, 259 F.3d at 1106 ("Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." (citation omitted)).

The Court declines to enter default judgment against Tanaka or award Plaintiffs all trial-related expenses they incurred.  The defense's failures, albeit egregious, do not warrant as severe a sanction as the entry of default judgment, which would automatically cause Plaintiffs to prevail as to Tanaka's liability.  Neither are Plaintiffs entitled to all expenses incurred from trial.[10]  Under FRCP 37, an award of expenses must be caused by the failure.  Plaintiffs would have

---

[10]  Plaintiffs cite *Matsuura v. E.I. Dupont de Nemours & Co.*, 102 Hawaiʻi 149, 152 (2003), to support an award of monetary sanctions for discovery abuse.  State court cases do not govern the issues in this Motion.

incurred trial-related expenses regardless of the failure.  Even if trial-related

expenses were reimbursable, it would be difficult, if not impossible, to identify the

portion of trial expenses attributable to the failure.  Notwithstanding the denial of

Plaintiffs' request for all trial-related expenses, the Court orders Tanaka to pay

Plaintiffs the fees and costs incurred in connection with this Motion.  Plaintiffs

shall submit a declaration in conformance with Local Rule 54.2(f)(1)–(5)[11] by May

26, 2020.

       2.     <u>Reopening Discovery Pursuant to FRCP 16(b)</u>

      Multiple of Plaintiffs' requested sanctions concern the reopening of

discovery.[12]  Scheduling orders "may be modified only for good cause and with the

judge's consent."  Fed. R. Civ. P. 16(b)(4).  District courts enjoy broad discretion

to modify scheduling orders.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

604, 607 (9th Cir. 1992).  The Court finds it both appropriate and necessary to

reopen discovery for the limited purpose of providing Plaintiffs with evidence that

the defense should have produced before trial.  Good cause exists for this belated

reopening of the discovery deadline because the defense's discovery failures came

---

[11]  Plaintiffs' counsel need not comply with the opening paragraph of Local Rule 54.2(f).

[12]  Plaintiffs' reliance on *Stender v. Vincent*, 92 Hawai'i 355 (2000), to reopen discovery, is misplaced.  The state procedural rules discussed in *Stender* do not govern the sanctions issues.  Federal procedural laws apply.

to light for the first time at trial.  *See id.* at 609. ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" (citations omitted)).  Additional discovery, which directly addresses the defense's failures, is one mechanism by which to remedy the situation.  Plaintiffs should have an opportunity to review the documents and conduct discovery regarding Tanaka's and Evans' budget and resource testimony and decide how that discovery affects the presentation of their case, if at all.

Further document production is already ongoing and will fully resume once COVID-19 restrictions are lifted.  In addition, the Court orders the following discovery:

(1)  *All* documents relating to the Buford report shall be produced by no later than **30 days** after COVID-19 restrictions are lifted and defense counsel are permitted to return to work.[13]  Any discovery that is obtainable and can be produced before then should be produced immediately.  This discovery includes, but is not limited to:  documents preceding, contemporaneous with, and subsequent to the issuance of the report; e-mails and other correspondence relating to the report; documents regarding distribution of the report and any actions taken in response to the report; and documents addressing funding or budget.

(2)  *All* documents concerning funding and budget for cameras from 2013 shall be produced no later than **30 days** after COVID-19 restrictions are lifted and defense counsel are permitted to return to work.[14]  Any

---

[13]  Recognizing that the resumption of operations may come in phases, with different divisions responsible for locating and producing these documents, the parties are directed to confer with Magistrate Judge Mansfield about the feasibility of meeting this deadline.

[14]  *See supra* note 13.

discovery that is obtainable and can be produced before then should be produced immediately.  If these documents include those listed in Jury Note No. 11, they shall be produced within the above timeframe.

(3)   Plaintiffs may retain an expert to address the Buford report, at the defense's expense, by no later than **May 29, 2020**.[15]  Presentation of the expert at trial will be subject to Federal Rule of Evidence 702.

(4)   All e-mails regarding the rapes that are the subject of this litigation.

(5)   Plaintiffs may re-depose Tanaka and Evans at the defense's expense. The depositions will be limited to addressing the budgetary and funding issues raised for the first time at trial and must be completed within one month after Plaintiffs receive the outstanding documents from the defense.

(6)   If the documents reveal the necessity to depose an FRCP 30(b)(6) witness, Plaintiffs may seek leave to do so.  Any such deposition will be conducted at the defense's expense.

No additional discovery shall be conducted without leave of court.  Plaintiffs should not interpret this to mean that they have carte blanche to seek expansion of the scope of discovery.  The reopening of discovery is intended to be very limited, both in scope and duration, as outlined above.

3.   Amending the TAC to Add Claims

Plaintiffs also ask to amend the TAC in the following respects:  (a) name Nolan Espinda in his individual and official capacities; (b) add equal protection

---

[15]   At this juncture, the Court rejects Plaintiffs' request to name experts to address the unproduced discovery that was relied upon at trial and declines to issue "[a]n instruction that if the jury finds that any document is missing that [Tanaka] should have produced I [sic] should draw the inference that the document was harmful to the defense."  Mem. in Supp. of Mot. at 25.

claims; and (c) assert rights under *Dooley* and *Logan*.  This request is DENIED

WITHOUT PREJUDICE.  It is premature for the Court to determine whether an

amendment to the TAC is warranted without understanding the scope and contents

of any outstanding discovery.[16]  Plaintiffs may seek leave of court to amend the

TAC after additional discovery is produced.

C.    Assertions that Tanaka Would Pay Damages "Out of His Own Pocket"

Plaintiffs also request sanctions for defense counsel's repeated reference to

Tanaka paying damages "out of his own pocket," arguing that the statements

constituted a fraud upon the Court and jury, violated the Federal Rules of Evidence

and the Court's prior orders, and were prejudicial.  Mem. in Supp. of Mot. at 16.

Plaintiffs ask for all fees and costs incurred during trial, entry of default judgment,

and an award of $100,000 for each of the six participating Plaintiffs,[17] for a total of

$600,000.  *Id.* at 17, 19; Reply at 10.

1.    State Court Cases

Plaintiffs cite a "long line" of state court cases outside Hawaiʻi in support of

their request for trial-related fees, none of which have any precedential or

---

[16]  At the hearing, Plaintiffs' counsel represented that Plaintiffs would not pursue
an Equal Protection claim against Tanaka and DPS Director Nolan Espinda on the
grounds of budgeting decisions if the sanction precluding Tanaka from raising a
budget defense remained in effect.

[17]  Plaintiffs Darnell K. Maluyo, Maelene Cruz, and Reyna M. Banks elected not to
participate in the litigation.

persuasive value.  Mem. in Supp. of Mot. at 15.  Even if the cases had precedential value, they would be inapplicable because they involve reversals of judgments and orders for new trials.  They do not remotely stand for the proposition that a party may recover all trial-related expenses as a sanction for improper statements at trial about a lack of indemnification.  Whether sanctions should be imposed for defense counsel's "out-of-his-own-pocket" statements is more appropriately evaluated under the Court's inherent powers.

        2.    <u>Inherent Powers</u>

The Court finds the requested sanctions for the "out-of-his-own-pocket" statements are most appropriately evaluated under its inherent powers.  "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, S. Ct. 1178, 1186 (2017) (citation omitted).  The Court's inherent powers are broad in that they apply to "a full range of litigation abuses."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  However, because inherent powers are very potent, they "must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citation omitted).  A court's authority under its inherent powers "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"  *Goodyear*, __ U.S. at __, 137 S. Ct. at 1186 (citation omitted).  One

22

such sanction is an award of attorneys' fees and fees to the movant.  *See id.*

(citation omitted).  When other rules could adequately sanction bad-faith conduct

during the course of litigation, "the court ordinarily should rely on the Rules rather

than the inherent power.  But if in the informed discretion of the court, neither the

statute nor the Rules are up to the task, the court may safely rely on its inherent

power."  *Chambers*, 501 U.S. at 50.

The imposition of sanctions requires a litigant to have acted in bad faith;

vexatiously, wantonly, or for oppressive reasons; or to have willfully disobeyed a

court's order.  *See Fink*, 239 F.3d at 992 (citation omitted); *Leon v. IDX Sys. Corp.*,

464 F.3d 951, 961 (9th Cir. 2006) (citation omitted).  And the district court must

"specifically find[] bad faith or conduct tantamount to bad faith."  *Fink*, 239 F.3d

at 994; *see Leon*, 464 F.3d at 961.  "Sanctions are available for a variety of types of

willful actions, including recklessness when combined with an additional factor

such as frivolousness, harassment, or an improper purpose."  *Fink*, 239 F.3d at 994.

Delaying or disrupting the litigation and "[a]ctions constituting a fraud upon the

court or actions that cause 'the very temple of justice [to be] defiled'" are sufficient

to support a finding of bad faith.  *Haeger v. Goodyear Tire & Rubber Co.*, 813

F.3d 1233, 1244 (9th Cir. 2016), *rev'd on other grounds by* __ U.S. at __, 137 S.

Ct. at 1178 (second alteration in original) (citation omitted).

To determine whether fraud constitutes fraud on the court, the relevant inquiry is whether the fraudulent conduct "harmed the integrity of the judicial process," not whether the conduct "prejudiced the opposing party." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1167–68 (9th Cir. 2017) (citation omitted). Fraud on the court, which "must be an 'intentional, material misrepresentation,'" "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.* at 1168 (citations omitted). The misrepresentations must also speak to the issues central to the case and affect the case's outcome. *See id.* "In other words, the newly discovered misrepresentations must 'significantly change the picture already drawn by previously available evidence.'" *Id.* (citation omitted). Finally, the fraud cannot be known at the time of settlement or the entry of judgment. *See id.*

Here, although it is a close call,[18] the Court cannot make the requisite finding of bad faith. Defense counsel's statements about Tanaka paying "out of his own pocket," while inappropriate, irresponsible, and misleading, were not

---

[18] At the hearing, defense counsel conceded that the comment was inappropriate, but argued that her statements were true because no indemnity agreement was in place. Given that the State has yet to decline to indemnify Tanaka, and he offered no evidence of a lack of indemnification, it was equally true that he might ultimately be indemnified. Therefore, it appears that the statements were offered solely to play on the jury's sympathy.

24

vexatious, wanton, nor made for oppressive reasons.  And defense counsel did not violate a court order in making the statements.

Plaintiffs characterize the "out-of-his-own-pocket" statement as "a whopper of a misrepresentation" because wardens are indemnified by the State "all the time."  Mem. in Supp. of Mot. at 8 (emphases removed).  Plaintiffs provide settlement agreements as evidence of this routine indemnification.  *Id.*, Exs. 6 & 7.  That wardens regularly enjoy indemnification in the settlement context—a voluntary means of resolution with no admission of liability—does not mean that the State would have indemnified Tanaka in this case had the jury found him liable for constitutional and state-law violations.  However, the mere possibility that the State might not indemnify Tanaka does not justify his counsel's attempt to cause the jury to think that Tanaka would be personally liable for any damages.  Tanaka argues that COVID-19 has caused the likelihood of his personal exposure to be more profound than ever before.  The consequences of COVID-19 cannot be offered as post hoc rationalization for improper statements made at trial *before* the crisis arose.  Despite the inappropriateness of the statements and prejudice that possibly resulted, defense counsel's conduct did not rise to the level of bad faith, as it did not delay or disrupt the litigation nor constitute a fraud upon the Court.

Plaintiffs emphasize the prejudice they suffered as a result of the statements, but that is not the salient inquiry when evaluating fraud upon the Court.  The Court

instead considers whether the integrity of the judicial process was harmed, and finds that it was not.  Plaintiffs were not deprived of any opportunity to challenge the propriety of the statements during trial and seek appropriate remedies.  Indeed, Plaintiffs' counsel *did not* object to the out-of-his-own-pocket comment during opening statements; he objected for the first time when the comment was again made during closing arguments.  This significantly undermines Plaintiffs' arguments.  Although defense counsel should never have made the comments, it is not the Court's responsibility to police counsel's comments and sua sponte strike anything that Plaintiffs might find objectionable.[19]  Plaintiffs contend that "the case law is clear that they didn't need to object, as such remarks and arguments are so obviously prejudicial and so obviously encourage the jury to decide a case on an improper basis."  Reply at 5.  However, Plaintiffs would be hard-pressed to seek any relief had they not objected at all during trial.

Plaintiffs request extraordinary sanctions for defense counsel's improper comment, but misconduct by trial counsel—if sufficiently egregious—is typically remedied by a new trial.  *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) ("Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide

---

[19]  The Court notes that Plaintiffs could have moved to exclude these types of comments through motions in limine, but they filed none.

conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" (alteration in original) (citation omitted)).  The fact that misconduct by counsel can result in a new trial does not support the imposition of monetary sanctions sought by Plaintiffs or a finding of bad faith.  Based on the foregoing, the Court cannot make a finding of bad faith.

Even if the Court were to determine that defense counsel acted in bad faith, it could not award the sanctions requested by Plaintiffs.  A sanction of fees and costs must be compensatory, not punitive.  *See Goodyear*, __ U.S. at __, 137 S. Ct. at 1186.  "In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (citation omitted).  An award extending beyond the "legal bills that the litigation abuse occasioned" to cover "fees that would have been incurred without the misconduct . . . crosses the boundary from compensation to punishment." *Id.*  A court must "establish a causal link . . . between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* (footnote omitted).  The causal connection—framed as a but-for test— allows "[t]he complaining party . . . [to] recover 'only the portion of his fees that he would not have paid for but for' the misconduct." *Id.* at 1187 (citations omitted).

An award of all expenses incurred in the trial would extend far beyond the amount necessary to compensate Plaintiffs for defense counsel's misconduct. Defense counsel's statements did not cause Plaintiffs to incur fees and costs that they would not otherwise have incurred *to try the case*.  Certainly, Plaintiffs would have incurred all expenses to try the case, regardless of whether defense counsel made the statements.  And this case does not fall into the category of exceptional cases justifying the recovery of all fees from a specific point in the litigation because the misconduct here was not part of a scheme to defeat a valid claim.  *See*, *e.g.*, *Goodyear*, __ U.S. at __, 137 S. Ct. at 1187–88 (explaining that all fees may be awarded from the start or midpoint of a suit in exceptional cases, such as when the entire course of the offending party's conduct "was 'part of a sordid scheme' to defeat a valid claim" (citation omitted)).

The Court's inherent powers similarly would not authorize the requested $600,000 sanction ($100,000 per Plaintiff), which is punitive in nature and arbitrary, having no correlation to the conduct alleged.  Plaintiffs have not provided any *governing authority*[20] that would entitle them to what is effectively a damages award.

---

[20]  As previously explained, state court cases do not inform the Court's decision.

Finally, the Court already ruled that Plaintiffs are not entitled to default judgment.  Accordingly, the Court DENIES Plaintiffs' request for trial expenses, an award of $600,000, and default judgment.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Default, Sanctions and Other Appropriate Relief. ECF No. 387.  As stated herein, the Court authorizes the following as sanctions for the defense's failures:

(1) *All* documents relating to the Buford report shall be produced by no later than **30 days** after COVID-19 restrictions are lifted and defense counsel are permitted to return to work.  Any discovery that is obtainable and can be produced before then should be produced immediately.  This discovery includes, but is not limited to:  documents preceding, contemporaneous with, and subsequent to the issuance of the report; e-mails and other correspondence relating to the report; documents regarding distribution of the report and any actions taken in response to the report; and documents addressing funding or budget.

(2) *All* documents concerning funding and budget for cameras from 2013 shall be produced no later than **30 days** after COVID-19 restrictions are lifted and defense counsel are permitted to return to work.  Any discovery that is obtainable and can be produced before then should be produced immediately.  If these documents include those listed in Jury Note No. 11, they shall be produced within the above timeframe.

(3) Plaintiffs may retain an expert to address the Buford report, at the defense's expense, by no later than **May 29, 2020**.  Presentation of the expert at trial will be subject to Federal Rule of Evidence 702.

(4) All e-mails regarding the rapes that are the subject of this litigation.

(5)  Plaintiffs may re-depose Tanaka and Evans at the defense's expense. The depositions will be limited to addressing the budgetary and funding issues raised for the first time at trial and must be completed within one month after Plaintiffs receive the outstanding documents from the defense.

(6)  If the documents reveal the necessity to depose an FRCP 30(b)(6) witness, Plaintiffs may seek leave to do so.  Any such deposition will be conducted at the defense's expense.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 12, 2020.



Jill A. Otake
United States District Judge

Civil No. 17-00143 JAO-KJM; *Reyes, et al. v. Tanaka, et al.*; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT, SANCTIONS AND OTHER APPROPRIATE RELIEF